**In the Matter of Franklin MILLS,
Appellant.**

**No. 82–930.**

District of Columbia Court of Appeals.

Argued July 14, 1983.

Decided Oct. 13, 1983.

Scott W. Howe, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Public Defender Service, Washington, D.C., at the time the brief was filed, was on the brief, for appellant.

Sandra Jefferson Grannum, Staff Atty., St. Elizabeths Hospital, with whom Maxine M. Harrington, Staff Atty., St. Elizabeths Hospital, Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher and John E. Stevens, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and BELSON, Associate Judges.

KERN, Associate Judge:

Appellant was on outpatient status at St. Elizabeths Hospital and then upon request by the staff was transferred to inpatient status. Such change triggered a hearing in the trial court which then entered an order to effect the change recommended by the Hospital.

Prior to the hearing held June 9, 1982, appellant's counsel asked the court to make new findings of mental illness and dangerousness and to apply the clear and convincing evidence standard in making its findings. The court denied the requests; however, it did make new findings of mental illness and dangerousness (and the finding that hospitalization was required), presumably applying the preponderance of the evidence standard.

The question presented on appeal (Brief for Appellant at 1) is

[w]hether the [trial] court committed reversible error by failing to apply the clear and convincing evidence standard of proof in making the findings that underlay its order revoking appellant's outpatient treatment status and committing him indefinitely to confinement in Saint Elizabeths Hospital.

The history of the case is as follows. The trial court in February 1978 ordered appellant committed to St. Elizabeths Hospital upon concluding that he was "mentally ill and because of such illness ... likely to injure himself and others if allowed to remain at liberty."

The court also ordered that appellant "be released ... forthwith as an inpatient and ... continue his treatment at said hospital as an outpatient ...." The court further ordered that

if patient's [appellant's] condition deteriorates, the hospital has the authority to hospitalize patient, and ... immediately upon hospitalization ... patient may request a hearing before the Mental Health Commission or the Court to contest such hospitalization ....

\*    \*    \*    \*    \*    \*

... [I]n no event may patient be hospitalized for over five days without the hospital notifying the court and counsel for the patient in writing of the reasons for the hospitalization.

The trial court in ordering such commitment had before it a Petition for Judicial Hospitalization filed by the Acting Superintendent of the Hospital and the Report and Recommendations of the Commission of Mental Health ("the Commission"). Notice of a hearing before the court was given appellant and he requested, through his attorney, a jury trial. However, the court noted in its commitment order that appellant thereafter "waived his right to a trial by the Court or by jury." Thus, it is clear that by such waiver of the right to contest the Commission's Report and Recommendation before a jury, appellant was thereby conceding that he was mentally ill and likely to injure himself or others by reason of this illness unless committed.

Except for several short periods of voluntary inpatient treatment, appellant subsequently was treated as an outpatient under the provisions of the court's February 1978 order until November 1981. In November 1981 appellant was returned to the "inpatient unit" of St. Elizabeths Hospital and thereafter the Commission was notified by a psychiatrist on the hospital staff that "[t]he behavioral manifestations of his [appellant's] psychosis and the total inability to care for self prevents his placement in the community even in his parents' home." In May 1982, the same staff psychiatrist further reported to the Commission that appellant's "prognosis is considered poor for improvement" and "if released at this time," "he would constitute a danger to self because of his mental illness." Accordingly, the staff psychiatrist requested "inpatient status for an indefinite period," whereupon appellant requested a hearing to contest his hospitalization.

On June 9, 1982, the trial court held a hearing at which testimony was taken from appellant, a social worker testifying on his behalf, and the staff psychiatrist at St. Elizabeths. On June 17 the trial court found that appellant "presently suffers from a mental illness and because of such illness is likely to injure himself if allowed to remain at liberty" and that appellant's "psychiatric condition has deteriorated to the point where *inpatient* psychiatric care is the only appropriate treatment alternative." (Emphasis added.)

The trial court upon the basis of these findings revoked its February 1978 Order of Commitment for Outpatient Treatment of appellant and ordered appellant hospitalized in St. Elizabeths for an indefinite period of time.

The applicable statute reads in pertinent part as follows:

... If the court ... finds that the person is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty, *the court may order his hospitalization for an indeterminate period, or order any other alternative course of treatment which the court believes will be in the best interests of the person or of the public....*

D.C.Code § 21–545(b) (1981) (emphasis added). The Superior Court Mental Health Rules provide two separate hearings in the commitment procedure: the first to determine the issues of mental illness and dangerousness, Super.Ct.Ment.H.R. 4, 5; and the second a dispositional hearing, Super.Ct. Ment.H.R. 6. Rule 6(a) provides further that in the dispositional hearing

[t]he Court may receive evidence concerning alternative dispositions less restrictive than commitment. *If the Court finds that a less restrictive disposition is appropriate and feasible, the Court shall order*

*the release of the patient subject to appropriate conditions.* [Emphasis added.]

Appellant contends on appeal that as a matter of due process his outpatient treatment status could not be revoked, and he could not be committed to indefinite confinement in a mental hospital, except upon a finding by clear and convincing evidence that he was mentally ill and as a result of that illness was likely to injure himself or others "unless placed there." It is clear that the court in its June 1982 order of inpatient commitment of appellant did not deem it necessary to use the clear and convincing standard.

■ Undergirding appellant's argument concerning the burden of proof is the contention that the 1978 commitment order did not amount to a concession that he was mentally ill and dangerous to himself and therefore should be hospitalized. Appellant points to the fact that such order did *not* require "inpatient hospitalization." Appellant argues that if "a presumption of mental illness and dangerousness was established at the original proceeding [resulting in the February 1978 commitment order] ... it was cancelled when the court found that Mr. Mills was not so mentally ill and dangerous that he had to be confined and when it then imposed treatment in accordance with Mr. Mills' need [treatment as an outpatient]." (Appellant's Reply Brief at 2.)

We are not persuaded that the trial court's 1978 commitment order can be read as narrowly as appellant urges. The trial court in 1978 was confronted with a Petition for Hospitalization and a recommendation by the Commission which both asserted appellant was mentally ill and dangerous to himself and others, and hence was in need of hospitalization at St. Elizabeths. The trial court so concluded in its commitment order—after appellant waived his right to have this issue tried by jury or by the judge. Although the court in its order released appellant from the status of inpatient treatment at St. Elizabeths "to continue his treatment at said hospital as an outpatient," the court expressly stated:

[I]f patient's condition deteriorates, the hospital has the authority to hospitalize patient . . . .

Thus, in our view, appellant cannot in the 1982 proceeding avoid the fact that the 1978 order committed him to the care and custody of the hospital, albeit the particular treatment which the court ordered for him was to be on an outpatient basis.

Appellant also argues that the dictates of *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), as applied in this jurisdiction by *In re Nelson,* 408 A.2d 1233 (D.C.App.1979), permitted the trial court as a matter of constitutional due process to change his treatment status from outpatient to inpatient *only* upon a finding by clear and convincing evidence that he was mentally ill and dangerous to himself and therefore needed hospitalization.

At the outset we must determine whether due process considerations are applicable; that is, whether the change in appellant's treatment status, in light of the 1978 order, infringed a constitutionally protected liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If so, we must consider that process is due. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

The government points out that, under D.C.Code § 21–545(b), before *any* restraints may be imposed upon an individual's liberty in a commitment proceeding, the requisite findings of mental illness and dangerousness must be made upon clear and convincing evidence. The government urges that, once such findings have been made, the evidentiary predicate is laid for any of a broad range of dispositions. The government describes appellant's "liberty interest, if any" at that stage as "drastically limited" and "qualified at best."

■ The statutory scheme in this jurisdiction does not limit the court in a commitment proceeding to a polarized choice between indefinite hospitalization and uncon-

ditional release: it makes "the entire spectrum of services ... available, including outpatient treatment, foster care, halfway houses, day hospitals, nursing homes, [and others]." *Lake v. Cameron,* 124 U.S.App. D.C. 264, 266–67, 364 F.2d 657, 659–60 (1966) (en banc). It has been construed to impose a duty upon the courts to explore alternatives both *within* the mental hospital, *Covington v. Harris,* 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1969), and *outside* the hospital, *Lake v. Cameron, supra,* and to require that the courts select the least restrictive alternative which would serve the purposes of the commitment. *Id.* Further, the court's February 1978 order in this case, although it permitted appellant's hospitalization, specifically required notice to the court in the event of extended or indefinite hospitalization and granted appellant the right to a hearing to contest hospitalization if it should occur. Thus, under the statute and the original commitment order, appellant had a legitimate expectation that he might continue in outpatient status unless the hospital was able to satisfy the court that hospitalization was the least restrictive appropriate alternative. We view this expectation, created by the statute and by the court's original commitment order, as one of substance sufficient to entitle appellant to due process safeguards. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 488–89, 100 S.Ct. 1254, 1261–1262, 63 L.Ed.2d 552 (1980); *Mills v. Rogers,* 457 U.S. 291, 300, 102 S.Ct. 2442, 2449, 73 L.Ed.2d 16 (1982).

■ However, appellant's liberty interest is a "conditional liberty." Although his transfer from less-restricted outpatient status to confinement in the Hospital deprives him of a measure of freedom, the fact remains that his initial commitment provided for hospitalization when necessary in addition to outpatient care; it was properly obtained; and he continues to be properly committed. *Accord, Lewis v. Donahue,* 437 F.Supp. 112 (W.D.Okl.1977) (patient committed and hospitalized, but released for outpatient treatment 7 days later, had "conditional liberty" interest in not being reinst-

itutionalized); *Meisel v. Kremens,* 405 F.Supp. 1253 (E.D.Pa.1975) (committees released for outpatient care enjoy "conditional liberty" interest in not having leave revoked); *In re True,* 103 Idaho 151, 645 P.2d 891 (1982) ("conditional liberty" interest recognized in formerly hospitalized individual placed on outpatient status); *see Dietrich v. Brooks,* 27 Or.App. 821, 558 P.2d 357 (1976) (impliedly recognizing "conditional liberty" interest with regard to trial visits, but denying requested procedures because the statute provided adequate safeguards); *contra, Hooks v. Jaquith,* 318 So.2d 860 (Miss.1975).

■ Having determined that due process considerations are present, we now consider whether they were offended by the trial court's failure to apply the clear and convincing evidence standard in this case. The Supreme Court has emphasized that "due process is flexible and calls for such procedural protections as the situation demands." *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600. In *Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982), the Supreme Court in holding that at least a clear and convincing evidence standard must be applied in proceedings to terminate the rights of natural parents in their children, explained that "its decisions concerning constitutional burdens of proof have not turned on any presumption favoring any particular standard," but that it "has engaged in a straightforward consideration of the factors identified in [*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)] to determine whether a particular standard of proof in a particular proceeding satisfies due process." Those factors are: the private interests affected by the proceeding, the risk of error in the challenged procedure (here, the failure to apply the clear and convincing evidence standard), and the countervailing governmental interest. *Id.,* citing *Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903. Applying those factors to this case, we conclude that appellant's due process rights were not violated.

**976**

Under the 1978 commitment order appellant enjoyed only very limited freedom from restraint and stigma—he was required by the order to participate in any treatment regimen prescribed by the hospital staff, and to report at various times to the hospital; and he was specifically subject under the order to hospitalization if his condition deteriorated. Moreover, the risk of erroneous hospitalization in this case was low because of the many safeguards which were made available: appellant received notice, an explanation of the reasons for the decision, a hearing in court before a neutral factfinder, a recorded transcript of the hearing, and counsel to represent him at the hearing. Most important, the government assumed the burden of establishing the need for inpatient treatment; and the court, upon considering the evidence, made new findings of mental illness and dangerousness and specifically concluded that hospitalization was "the only appropriate treatment alternative." (Record at 64.)[1] In addition to these factors, we are also mindful of the government's countervailing *parens patriae* interest in protecting its citizens.

We are satisfied that the trial court did not err in declining to apply the clear and convincing standard of evidence in the 1982 proceeding which resulted in appellant's indefinite hospitalization. Without deciding precisely what *minimum* procedural rights apply in such a case, we hold that due process requires no more than appellant received in this case.

*Affirmed.*

---

1. Appellant also had the right, under D.C.Code § 21–546 (1981), to obtain re-examination of his mental condition as often as every six months and to petition the court for an order directing his release if one or more of the examining physicians concluded that he was no longer mentally ill to the extent that he constituted a danger to himself or others if not hospitalized.