**In re Hazel GAITHER, Appellant.**

No. 91–FM–405.

District of Columbia Court of Appeals.

Submitted Feb. 10, 1993.

Decided June 24, 1993.

Marion E. Baurley, Washington, DC, was on the brief, for appellant.

John Payton, Corp. Counsel, Charles L. Reischel and Janet L. Maher, Deputy Corp. Counsel, and Karen Katz, Asst. Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before TERRY, SCHWELB, and SULLIVAN, Associate Judges.

TERRY, Associate Judge:

Appellant Hazel Gaither appeals from an order committing her to Saint Elizabeths Hospital for inpatient treatment. She asserts that the order was based on a "trial," as opposed to a disposition hearing, and that at this trial the court improperly shifted the burden of proof to her and required her to show that she was not a danger to herself or to others. Additionally, appellant contends that the court failed to consider less restrictive alternatives to inpatient treatment and failed to make findings of fact in support of its order. Because it is clear from the record that the proceeding before the court was a disposition hearing, that the court did not impermissibly shift the burden of proof, and that the court found inpatient treatment to be the least restrictive alternative, we affirm the order of commitment.

I

On November 9, 1989, Dr. Henry Edwards, a physician at the mental health unit of the District of Columbia Jail, filed an application, pursuant to D.C.Code § 21–522 (1989),[1] for the emergency hospitaliza-

---

1. Section 21–522, which provides for the emergency hospitalization of mentally ill persons, is part of the District of Columbia Hospitalization

tion of appellant Gaither. In his application the doctor said that appellant, a resident of the jail[2] who was scheduled to be released that very day, was in "no condition to care for herself and protect herself in the community." He also stated that appellant was experiencing delusions and hallucinations, that she was threatening to harm others, and that her condition was deteriorating despite the use of medication. She was then taken to Saint Elizabeths Hospital, where Dr. William Richie, a psychiatrist, examined her and found her to be "impulsive, hostile, [and] psychotically decompensated." He certified in writing that he had examined appellant and concluded that she was mentally ill and "likely to injure herself or others [and was] in addition unable to care for herself."[3] She was thereupon admitted to Saint Elizabeths.

On November 20 the hospital filed a petition for judicial hospitalization (civil commitment),[4] accompanied by a certificate from one of its resident psychiatrists which contained a diagnosis of schizophrenia, paranoid type, and recommended further inpatient treatment. A hearing was scheduled for December 14, 1989, before the court's Commission on Mental Health, but it was continued eleven times and not actually held until September 25, 1990.[5] A few days later, on October 1, the Commission filed a report recommending that appellant remain an inpatient at Saint Elizabeths for an indeterminate period. In its report the Commission said:

> Upon consideration of the medical history, the demeanor of the respondent, and the testimony taken at the hearing, the Commission concludes that the respondent is suffering from *SCHIZO-PHRENIA, PARANOID TYPE, CHRONIC, and is likely to injure herself and others if allowed to remain at liberty.* [Emphasis in original.]

At the end of the report was a notice to appellant that she "or anyone in [her] behalf" had five days within which to demand a trial by jury "to determine the issue of [her] mental illness."[6]

No such demand was filed within the five-day period. The court then appointed a guardian *ad litem* and directed him to ascertain whether appellant was competent to decide whether she should accept the recommendation of the Commission or challenge it before a judge or jury.[7] If she was not competent, the court's order said, the guardian was to apply the "substituted judgment" test of *In re Boyd*, 403 A.2d 744 (D.C.1979). Shortly thereafter the guardian *ad litem* filed a report stating that in his opinion appellant was not competent to make a decision. He concluded, after applying the substituted judgment test, that appellant, if competent, would accept the

---

of the Mentally Ill Act. It states in pertinent part:

> [T]he administrator of a public hospital shall ... admit and detain for purposes of emergency observation and diagnosis a person with respect to whom application is made under section 21–521, if the application is accompanied by a certificate of a psychiatrist or qualified psychologist on duty at the hospital stating that he has examined the person and is of the opinion that he has symptoms of a mental illness and, as a result thereof, is likely to injure himself or others unless he is immediately hospitalized.

Section 21–521, to which this section refers, provides for the temporary detention of persons believed to be mentally ill, pending the filing of an application for hospitalization.

**2.** Appellant had been transferred to the jail from a federal prison just a few days earlier. She was completing a thirteen-year sentence for second-degree murder while armed (she killed her husband) and arson.

**3.** *See* D.C.Code § 21–522 (1989).

**4.** *See* D.C.Code § 21–541 (1989).

**5.** The record reflects that most of the continuances were granted either "at the request of counsel" or "with consent of all parties." One continuance resulted from the withdrawal of appellant's counsel and the appointment of new counsel; another occurred because counsel was in trial. The record also reveals that on several occasions appellant refused to attend the hearing, and in fact she was not present during the hearing on September 25.

**6.** This five-day notice is required by D.C.Code § 21–545(a) (1989).

**7.** The order of appointment states that appellant's counsel was not able to make this determination herself and requested the court to appoint a guardian *ad litem*.

recommendation of the Commission for inpatient treatment, thereby waiving a trial to determine whether she was mentally ill. The case was then set down for a disposition hearing, which was held, again after several continuances, on February 27, 1991.

Meanwhile, in November 1990, Dr. Sinen Pe–Pimentel, another psychiatrist who was treating appellant at Saint Elizabeths, submitted to the court a "Dispositional Report." Dr. Pe–Pimentel related that appellant refused to take medication because she said she was pregnant, refused to sleep in her bed because she believed it was full of snakes, and claimed that her late husband was God. In addition, the doctor said, appellant was "hostile, suspicious, angry, seclusive, [and] withdrawn...." She habitually wore winter clothing on hot days, apparently did not bathe (no one knew for sure), and threatened bodily harm to others without provocation. "[S]he cannot take care of herself and her activities of daily living. She has no insight or judgment. She is a danger if let out at liberty." The doctor concluded that appellant was "suffering from a major mental illness," which she diagnosed as "Schizophrenia, Paranoid, Chronic."

■ At the disposition hearing, the hospital relied upon the Commission's report, Dr. Pe–Pimentel's report, the guardian's report, and a social worker's report to support its recommendation for inpatient treatment. Appellant's counsel then called Diane Carroll, a psychiatric nursing assistant who worked on the evening shift in appellant's hospital ward. Ms. Carroll testified that appellant bathed daily, took her medicine without incident, performed her assigned chores very well, and appeared to be cooperative. In rebuttal the hospital called Dr. Pe–Pimentel. She testified that in her opinion appellant was dangerous and that it was necessary for her to remain hospitalized until she could better care for herself. The doctor also said that appellant was

delusional, had poor impulse control, and threatened other people. She refused to take prescribed medication even though it would be helpful to her. On cross-examination the doctor acknowledged that her opinion as to appellant's dangerousness was based in part on appellant's numerous past convictions for assault and battery, as well as the murder of her husband.[8]

In closing arguments to the court, appellant's counsel[9] urged that, although the hearing was "dispositional rather than perhaps a revocation," the hospital should be required to demonstrate the least restrictive alternative to inpatient commitment. The court then concluded:

> All the medical evidence in this case points to the fact that the least restrictive commitment is an inpatient commitment at this time. The Mental Health Commission so recommends. The treatment team recommends that. The doctor who just testified [Dr. Pe–Pimentel] recommends that. The only thing which might be considered to the contrary is the testimony of the psychiatric nursing assistant which states that on the night shift she doesn't have any problem with her. I am going to sign the order for inpatient commitment.

The order was signed and filed, and appellant noted this appeal.

II

■ The thrust of appellant's argument is that the proceedings in the Superior Court were in the nature of a "trial" rather than a "disposition hearing," and that her right to due process was therefore infringed in various respects. We reject this argument because it is based on an incorrect premise: the February 27 hearing was a disposition hearing under Mental Health Rule 6 to determine the proper course of

---

8. These convictions are not too remote to provide support for a commitment order. The hospital was not required to show that appellant "engaged in *recent* overt acts of violence in order to prove dangerousness." *In re James,* 507 A.2d 155, 158 (D.C.1986) (citations omitted;

emphasis added); *see also In re Gahan,* 531 A.2d 661, 666 (D.C.1987) (evidence of self-inflicted injury dating back seven years was relevant).

9. Appellant is represented by different counsel on appeal.

treatment,[10] not a trial under Rules 4 and 5 to determine whether she was mentally ill and dangerous.[11]

D.C.Code § 21–544 (1989) requires the Commission to hold a hearing and determine whether a person is mentally ill and a danger to herself or others.[12] Section 21–545(a) requires the court, after it receives the Commission's report, to set the matter promptly for a hearing and to notify the patient and her attorney that a demand for a jury trial must be made within five days after service of the notice. Section 21–545(a) also provides that if there is no timely demand for a jury trial, "the court shall determine the person's mental condition on the basis of the report of the Commission, or on such further evidence in addition to the report as the court requires." D.C.Code § 21–545(a). These procedures were properly followed in this case.

First, as we have indicated, the Commission held a hearing on appellant's mental condition, determined that she was mentally ill and would be a danger to herself and others if permitted to remain at liberty, and filed its report with the court. A few days later, the court appointed a guardian *ad*

*litem* and directed him to determine whether appellant was competent to make a decision about whether to challenge the Commission's report. If he found that she was not competent, he was to make the decision for her under the substituted judgment test. The guardian concluded in his written report that appellant was not competent to make such a decision, but that "if she were competent to make her own decision ... she would accept the recommendation of the Commission on Mental Health for inpatient treatment." The effect of this conclusion was to waive her right to a full-fledged jury (or non-jury) trial to determine her mental condition.[13] The guardian also accepted the diagnosis of appellant's mental illness after reviewing "all available documents," conferring with her treating psychiatrist, Dr. Pe–Pimentel, and interviewing appellant herself on two occasions. He found her to be "paranoid, delusional, grandiose, and out of touch with reality," and concluded, as everyone else had, that she "would be a danger to herself, if not to others, if she tried to live in the community by herself." The court then appropriately scheduled a disposition hearing *at the request of appellant's counsel*[14] to deter-

---

**10.** Super.Ct.Ment.H.R. 6 provides in part:
(a) *Disposition.* The disposition hearing will be held immediately after the final hearing or trial provided for by Rule 4 of these Rules unless continued for good cause shown. The Court may receive evidence concerning alternative dispositions less restrictive than commitment. If the Court finds that a less restrictive disposition is appropriate and feasible, the Court shall order the release of the patient subject to appropriate conditions.

**11.** Super.Ct.Ment.H.R. 4 provides in part:
(d) *Trial by jury or trial by the Court.* If the respondent has requested within five days after notice of the final hearing served pursuant to D.C.Code § 21–545, a trial by jury or a trial by the Court on the issues of mental illness and dangerousness, the Court shall set trial at the earliest practicable date.
Rule 5(a) places on the government (*i.e.*, the hospital) "the burden of proving by clear and convincing evidence that the respondent is mentally ill and, because of that illness, is likely to injure [herself] or other persons if allowed to remain at liberty."

**12.** Section 21–544 provides in part:
If the Commission finds, after [a] hearing, that the person with respect to whom the

hearing was held is mentally ill, and because of the illness is likely to injure [herself] or other persons if allowed to remain at liberty, the Commission shall promptly report that fact, in writing, to the Superior Court of the District of Columbia. The report shall contain the Commission's findings of fact, conclusions of law, and recommendations.

**13.** Actually, appellant had already waived that right by failing to demand a trial within five days after being served with the Commission's report. During that five-day period, we note, she was represented by counsel, who surely would have filed the requisite demand for a trial (jury or non-jury) if she had thought a trial was called for. Even after the guardian *ad litem* filed his report, neither appellant nor her counsel requested a trial.

**14.** At the February 27 hearing, when the court asked whether there was "anything left to be done other than to sign an order committing her [as an] inpatient," appellant's counsel replied:
Yes, Your Honor. This came up at a hearing before Judge Block, and *I requested at that time a dispositional hearing be held* in which the court would decide if Ms. Gaither, in fact,

mine the least restrictive treatment alternative. *See In re Richardson,* 481 A.2d 473, 480 (D.C.1984); Super.Ct.Ment.H.R. 6(a); *see generally Lake v. Cameron,* 124 U.S.App.D.C. 264, 364 F.2d 657 (1966) (en banc).

Appellant's claim that her due process rights were violated because the burden of proof was impermissibly shifted to her to prove she was not mentally ill is simply wrong. As we have said, the record clearly demonstrates that the February 27 hearing was dispositional in nature, in accordance with Mental Health Rule 6. The issue before the court at that hearing was not whether appellant was mentally ill and dangerous—that had already been determined—but what form of treatment she should receive. In deciding that issue, the court was entitled to consider the reports prepared by the Commission, the guardian *ad litem,* and the social worker, or indeed any other probative evidence. Appellant cannot now contend that this came as a surprise. When the court remarked that the hospital was "going to rest upon the decision of the treatment team ... and the recommendation of the Mental Health Commission," it said to appellant's counsel, "[I]f you feel as though you can rebut that, you certainly have a right to do so." Counsel replied, "Fine, Your Honor," reserving only the right to call Dr. Pe–Pimentel as a witness. It is clear from the record that the burden remained with the hospital throughout the hearing, and that everyone recognized this.

 Moreover, and contrary to appellant's assertion, at the disposition stage the trial court need not apply the clear and convincing evidence standard in determining the least restrictive form of treatment. *See In re Mills,* 467 A.2d 971, 975–976 (D.C.1983). That standard is applicable only at an earlier stage of a civil commitment proceeding, when the hospital must prove that the person for whom commitment is sought is mentally ill and likely to

injure self or others. *See In re Gahan, supra* note 8, 531 A.2d at 664; Super.Ct.Ment.H.R. 5(a). At the disposition stage, neither statute nor rule nor case law requires the hospital to prove by clear and convincing evidence what the least restrictive alternative may be. Rule 6(a) provides that the court "may receive evidence concerning alternative dispositions less restrictive than commitment," but it places no particular evidentiary burden on the hospital. Nevertheless, in this case as in *Mills,* the hospital "assumed the burden of establishing the need for inpatient treatment; and the court, upon considering the evidence ... specifically concluded that hospitalization was the only appropriate treatment alternative." *In re Mills, supra,* 467 A.2d at 976 (internal quotation marks omitted). Because the court's decision was abundantly supported by the evidence, reversal is not warranted. *See* D.C.Code § 17–305(a) (1989).

■ Finally, and contrary to appellant's assertion, the court was not required to make specific factual findings concerning appellant's mental condition unless it was requested to do so by a party. *See* Super.Ct.Ment.H.R. 5(c). No such request was made at any time in this case, either by appellant's counsel or by anyone else. As to the proper form of treatment, the court did make, in accordance with our case law, "an explicit finding that the proposed treatment [was] the least restrictive alternative." *In re James, supra* note 8, 507 A.2d at 158.

The order committing appellant to Saint Elizabeths Hospital for inpatient treatment is accordingly

*Affirmed.*

---

should be inpatient or outpatient committed, *and that was my belief as to what this hearing would involve.*

In response to a further question from the court, counsel reiterated that Judge Block had "set it down for today's hearing ... *as a dispositional hearing.*"