**In re John F. CLARK, Appellant.**

**No. 95–FM–1039.**

District of Columbia Court of Appeals.

Argued March 11, 1997.
Decided Sept. 25, 1997.

---

Burton Penn, Washington, DC, appointed by the court, with whom Marion B. Phillips, was on the brief, for appellant.

Maureen W. Zaniel, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel and Janet L. Maher, Deputies Corporation Counsel, were on the brief, for appellee District of Columbia Commission on Mental Health Services.

Before STEADMAN *, KING and REID, Associate Judges.

REID, Associate Judge:

Appellant John F. Clark appeals from the judgment of the trial court which changed his status from a voluntary inpatient to an involuntary inpatient at Saint Elizabeths Hospital. His status changed after he was charged with assault on an employee of Saint Elizabeths Hospital, was found to be incompetent to stand trial, and further, was determined to be mentally ill and a danger to himself and others. He maintains that a voluntary inpatient may not be subjected to involuntary civil commitment under D.C.Code § 21–541 (1997). We disagree and affirm.

## FACTUAL SUMMARY

John Clark's history with Saint Elizabeths Hospital and its John Howard Pavilion, which houses the forensic program, began when he was transferred to John Howard in 1983 from the Lorton Youth Center. He remained there until May 1985, when he became a voluntary outpatient. Because of his unmanageable and psychotic behavior,

however, he voluntarily returned to inpatient status at Saint Elizabeths Hospital in September 1987 where he has resided continuously since that time.

On June 27, 1994, he assaulted his counselor in her office at the hospital. He exposed himself to her, tried to close the door to her office, extinguished the lights and grabbed her by the arm. His counselor was able to break free.

A warrant evidencing probable cause for Clark's arrest was issued on July 19, 1994. Robert L. Mitchell, a Metropolitan Police Department officer, signed an affidavit in support of the arrest warrant. In the affidavit, he summarized the facts regarding the assault as recounted to him during a telephone interview with Clark's counselor. On July 23, 1994, Clark was charged with assault, in violation of D.C.Code § 22–504 (1989). The trial court ordered a competency examination on August 19, 1994.

The District of Columbia Commission on Mental Health Services ("the Commission") conducted the competency examination on October 12, 1994, and reported its findings on October 21, 1994. During the examination, Clark's "speech was confused, rambling, and at times his associations loosened, revealing bizarre thought content.... His judgment was marred by thought processes detached from reality, poor impulse control, and impaired intellectual functioning." The staff psychiatrist concluded "that Mr. Clark is incompetent because mental health factors and cognitive deficits substantially impair his capacity to have a factual and rational understanding of the proceedings and to properly assist counsel with the preparation of his defense." Clark was diagnosed as a schizophrenic, and was found to be mildly retarded. On November 4, 1994, he was placed in the Forensic Inpatient Services Division, pursuant to D.C.Code § 24–301(a) (1996), because he was considered to be "inappropriately placed" given his continuing aggressive sexual behavior and his "[change] from just exposing himself to grabbing and trying to entrap someone into a closed room."[1]

* Judge Steadman was added to the panel after oral argument because of Judge Ferren's recusal.

1. Section 24–301(a) provides in pertinent part:

The trial court ordered a second examination of Clark to determine "whether there is any likelihood that [he] will regain competency." The Commission reported on January 30, 1995, that "it is unlikely that [Clark] will regain competency in the foreseeable future." Consequently, the trial court made a finding on February 1, 1995, under *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), that Clark was mentally incompetent to stand trial, and was unlikely to regain competency in the reasonably foreseeable future.

Clark was given a mental health status exam in preparation for the filing of a physician's certificate required by D.C.Code § 21–541. During that exam, "[h]e denied having a mental illness and denied the need for medication stating, 'I'm okay. I'm in good health.'" On March 3, 1995, the Commission filed a petition for judicial hospitalization pursuant to § 21–541, alleging that Clark

> [i]s mentally ill and, because of such illness, is likely to injure himself or others if allowed to remain at liberty, and is therefore a proper subject for judicial hospitalization for an indeterminate period ..., or for such alternative course of treatment as the Court believes would be in the best interests of [Clark] and of the public.

Clark moved to dismiss the petition on the ground that he was a voluntary inpatient, and thus, a petition for judicial hospitalization was invalid. His motion to dismiss was denied on May 10, 1995. A trial on the petition for judicial hospitalization took place

on May 19, 1995. The trial court found, by clear and convincing evidence, that Clark was mentally ill and "likely to injure himself or others if allowed to remain at liberty."

In its April 1995 report and recommendations addressed to the trial court, the Commission found that Clark's "insight is so poor that he does not believe he is mentally ill; yet, he has shown no real progress in 10 years." The Commission also concluded that Clark's "condition remains unstable," and that he suffers from "schizophrenia chronic undifferentiated, impulse control disorder, not otherwise specified, exhibitionism and mild mental retardation." It recommended "[t]hat the Court order hospitalization of John Clark ..., under the supervision of the Commission ... as a committed inpatient for an indeterminate period." Subsequently, a comprehensive psychological dispositional report was filed by the Commission on June 22, 1995, detailing the history of Clark's bizarre sexual behavior, his poor impulse control, and his inability to adjust to his outpatient status while staying with his mother, or while residing in community treatment facilities. The report concluded that "Mr. Clark should be treated in a secure inpatient setting because he remains mentally ill and dangerous to himself and to others. His condition is chronic and deteriorating. The potential for violence has been increasing since Mr. Clark's arrest on the instant charge."

He was described as "actively psychotic and a danger to himself and others." [2] The rec-

---

(a) If it appears to a court having jurisdiction of: (1) a person arrested, or indicted for, or charged by information with, an offense; ... that, ... from prima facie evidence submitted to it and prior to the imposition of sentence, ... such person ... is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to the District of Columbia General Hospital or other mental hospital designated by the court, for such reasonable period as the court may determine for examination and observation and for care and treatment if such is necessary by the psychiatric staff of said hospital. If, after such examination and observation, the superintendent of the hospital, in the case of a mental hospital, or the chief psychiatrist of the District of Columbia General Hospital, in the case of the District of Columbia General Hospital,

shall report that in his opinion the accused is of unsound mind or mentally incompetent, such report shall be sufficient to authorize the court to commit by order the accused to a hospital for the mentally ill unless the accused or the government objects, in which event the court, after hearing without a jury, shall make a judicial determination of the competency of the accused to stand trial.... If the court shall find the accused to be then of unsound mind or mentally incompetent to stand trial or to participate in transfer proceedings, the court shall order the accused confined to a hospital for the mentally ill.

2. The June 22, 1995, dispositional report also pointed out that:

> Drs. Rogers and Hugonnet also noted increasing aggressiveness in 1994 and 1995; the treatment team in the civil division noted this

ommendation of the Commission was presented at a July 6, 1995 dispositional hearing. Also, testimony was taken from Clark's treating psychologist, Dr. Mitchell Hugonnet, who stated that Clark "continue[s] to engage in unprovoked acts of violence and inappropriate sexual activity, even within the confines of a maximum security ward." The trial court found that Clark "believes he is not mentally ill," and also determined that "[l]ess restrictive treatment alternatives have been explored" but that Clark "is not yet psychiatrically stable and thus not appropriate for outplacement in the community at this time." Consequently, on July 13, 1995, the trial court committed Clark for "an indefinite period to the [Commission] for inpatient treatment." Clark filed a timely appeal.

### ANALYSIS

Clark contends that there is "no authority by statute or case law which allows a Petition for Judicial Hospitalization to be filed against a voluntary patient." Furthermore, he contends that he "should be allowed to return to the Civil side of the Saint Elizabeths Hospital as a voluntary inpatient." In addition, he argues, "should he so desire, he should be allowed to sign himself out of the Hospital within forty-eight hours notice albeit against medical advi[c]e." The District maintains that the petition for judicial hospitalization was properly filed after a finding of mental incompetency to stand trial, and that the public interest requires commitment of a mentally incompetent person who is likely to injure self or others.

We have never before decided whether a voluntary inpatient at Saint Elizabeths Hospital, for whom an arrest warrant has been issued because he sexually assaulted a hospital employee, and who has been deemed mentally ill, incompetent to stand trial, a danger to himself and others, but who continually denies mental illness and is increasingly aggressive sexually, may be committed as an involuntary inpatient through a petition for judicial hospitalization when his mental condition has steadily deteriorated, and he is not amenable to treatment as a voluntary inpatient. However, in *In re Johnson*, 691 A.2d 628 (1997), we

> conclude[d] that ... a voluntary outpatient who meets the statutory criteria for civil commitment may be involuntarily committed as an outpatient, when ... nothing more than conversion of the individual's outpatient status from voluntary to involuntary [is proposed].

*Id.* at 632. We now conclude that, based on the record before us, nothing in the Hospitalization of the Mentally Ill Act, Pub.L. No. 89–183, 79 Stat. 751 (1965) (codified as amended at D.C.Code §§ 21–501 to –592) ("the Act"), or the Constitution precludes changing Clark's status from a voluntary inpatient to an involuntary inpatient.

### I.

■ Clark argues that his equal protection right is implicated because, under the Act, he is entitled to continue as a voluntary patient and to sign himself out of Saint Elizabeths after forty-eight hours notice, pursuant to §§ 21–511 and 512.[3] His equal protection

increase in aggression and sexual acting out and considered Mr. Clark inappropriately placed in a civil division inpatient unit on voluntary status. Mr. Clark has become increasingly aggressive during this hospitalization despite an increase in his medication instituted on June 1, 1995, in the wake of an attack by Mr. Clark. He exhibits no insight into his illness and if left unsupervised would not take medication. The two most recent attacks on JHP–9 [John Howard Pavilion] have been completely unprovoked and there have been no visible precursors to the attacks; Mr. Clark's potential for unpredictable, unprovoked violent aggression remains extremely high.

3. D.C.Code § 21–511 provides:

A person may apply to a public or private hospital in the District of Columbia for admission to the hospital as a voluntary patient for the purposes of observation, diagnosis, and care and treatment of a mental illness. Upon the request of such a person 18 years of age or over, or, in the case of a person under 18 years of age, of his spouse, parent, or legal guardian, the administrator of the public hospital to which application is made shall, if an examination by an admitting psychiatrist or an admitting qualified psychologist reveals the need for hospitalization, or the administrator of the private hospital to which application is made may, admit the person as a voluntary patient to the hospital for the purposes described by this section, in accordance with this chapter.

D.C.Code § 21–512 provides:

argument is unclear, but he relies on *Jackson, supra.* That reliance is misplaced. In *Jackson,* the Supreme Court held

> that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

406 U.S. at 738, 92 S.Ct. at 1858. Here, the Commission did not rely solely upon the determination of Clark's incompetency to stand trial as a basis for seeking his indefinite commitment as an involuntary patient. Rather, consistent with the principles set forth in *Jackson,* the Commission, through its Medical Director, Dr. Roger Peele, commenced judicial hospitalization procedures under § 21–541.[4] The trial court held a trial on the petition in May 1995, and a dispositional hearing in July 1995. Hence, he was afforded the same procedures to which any person who is the subject of a petition for judicial hospitalization would be entitled. We see no equal protection violation under *Jackson.*

> (a) A voluntary patient admitted to a hospital pursuant to section 21–511 may, at any time, if he is 18 years of age or over, obtain his release from the hospital by filing a written request with the chief of service. Within a period of 48 hours after the receipt of the request, the chief of service shall release the patient making the request. A voluntary patient under 18 years of age, so admitted, may, at any time, obtain his release from the hospital in the same manner, upon the written request of his spouse, parent, or legal guardian.
> (b) When the chief of service determines that a voluntary patient hospitalized pursuant to section 21–511 has recovered or that continued hospitalization of the patient is no longer beneficial to him, or advisable, the chief of service may release him from the hospital.

4.  D.C.Code § 21–541 provides in pertinent part:
> (a) Proceedings for the judicial hospitalization of a person in the District of Columbia may be commenced by the filing of a petition with the Commission on Mental Health by his

## II.

We have found no statutory provision and no case law, nor does Clark cite to any, which preclude the conversion of a voluntary inpatient to an involuntary inpatient on the record presented in this appeal. Nonetheless, Clark maintains that under our decision in *In re Blair,* 510 A.2d 1048 (D.C.1986), his status may not be changed from that of a voluntary patient to that of an involuntary patient. *Blair* concerned a voluntary outpatient who suffered from substance abuse. One day he advised his psychiatric nurse that he needed help and both agreed that he should be hospitalized. Blair asked for time to take care of some personal matters. He returned the next day and was presented with two options: (a) enter the hospital as a voluntary patient, or (b) have a health center psychiatrist admit him as an involuntary patient. Blair opted for voluntary admission. His nurse asked him to see the health center psychiatrist for evaluation. The health center psychiatrist decided that Blair should be admitted as an involuntary patient. Blair was not informed of this decision. When the hospital filed a petition to detain him for a seven day period of observation under D.C.Code § 21–524, he requested a hearing under D.C.Code § 21–525 and moved to dismiss the petition on the ground that he had asked for voluntary admission. The trial court denied Blair's motion to dismiss the

> spouse, parent, or legal guardian, by a physician or a qualified psychologist, by a duly accredited officer or agent of the Department of Human Services, or by an officer authorized to make arrests in the District of Columbia. The petition shall be accompanied by:
> (1) a certificate of a physician or qualified psychologist stating that he has examined the person and is of the opinion that the person is mentally ill, and, because of the illness is likely to injure himself or other persons if allowed to remain at liberty; or
> (2) a sworn written statement by the petitioner that:
> (A) the petitioner has good reason to believe that the person is mentally ill, and, because of the illness, is likely to injure himself or other persons if allowed to remain at liberty; and
> (B) the person has refused to submit to examination by a physician or qualified psychologist.

petition. In reversing, we based our decision on *In re Curry*, 152 U.S.App.D.C. 220, 470 F.2d 368 (1972), saying, in part:

once an individual seeks and is amenable to voluntary treatment, any subsequent steps taken to change that person's status from a voluntary patient to an involuntary patient are invalid.

510 A.2d at 1050 (citing *Curry, supra*, 152 U.S.App.D.C. at 223–24, 470 F.2d at 371–72).[5] We held that Blair's involuntary hospitalization was premature and thus invalid. *Id.* at 1051. In relying also on D.C.Code §§ 21–511 and 21–512, we pointed out that "[t]the Hospitalization of the Mentally Ill Act, D.C.Code Sec. 21–501 *et seq.* . . ., protects the status of voluntary patients by ensuring that their desire for voluntary treatment is honored." *Id.* at 1050.

In *Johnson, supra*, we said:

although we do not decide the matter, there would appear to be room, even under *Blair*, for a petition to seek involuntary commitment of a voluntary inpatient who no longer is "amenable to voluntary treatment."

691 A.2d at 635. Here, in contrast to *Blair* and *Curry*, not only has Clark been subjected to an arrest warrant for sexually assaulting a hospital employee; been found to be mentally ill, incompetent to stand trial, and a danger to himself and others; but also, while in both voluntary and involuntary inpatient status he has continued to resist treatment by proclaiming that he is not mentally ill, even as his mental health condition has deteriorated to the point of requiring supervision to ensure that he takes his medication and that he does not engage in violent, unprovoked sexual behavior. In short, post-admission developments demonstrated that Clark no longer was amenable to treatment as a voluntary inpatient. Accordingly, under *Johnson, supra*, there was no statutory barrier to a change in his status from a voluntary to an involuntary inpatient.

### III.

Clark may not be heard to complain that his involuntary inpatient status violates statutory and constitutional requirements. He was afforded both procedural and evidentiary protection. He was examined twice for competency to stand trial. In addition, after the petition for judicial hospitalization was filed under § 21–542, he had an evidentiary trial on May 19, 1995, and was determined, by clear and convincing evidence, to be mentally ill and likely to injure himself or others.[6] He also had an evidentiary dispositional hearing on July 6, 1995, pursuant to §§ 21–544 and –545.[7] Clark calls our attention to no other

---

5. Curry visited George Washington University Hospital, "stating that he heard voices in his head telling him to 'go die,' and 'leave,' and complaining of electric devices in his head which were controlling his behavior." *Curry, supra*, 152 U.S.App. D.C. at 221, 470 F.2d at 369. He was advised to go to Saint Elizabeths Hospital. When Curry refused, a doctor at George Washington filled out an application for emergency hospitalization and had him taken to Saint Elizabeths in an ambulance. After detaining him for observation and diagnosis under emergency hospitalization statutory provisions, Saint Elizabeths petitioned for judicial hospitalization. The court concluded that because Curry had asked for voluntary admission at George Washington, and because there was no indication that he resisted treatment, his emergency, involuntary hospitalization was invalid.

6. Section 21–542(a) provides:

(a) The Commission shall promptly examine a person alleged to be mentally ill after the filing of a petition under section 21–541 and shall thereafter promptly hold a hearing on the issue of his mental illness. The hearing shall be conducted in as informal a manner as may be consistent with orderly procedure and in a physical setting not likely to have a harmful effect on the mental health of the person named in such petition. In conducting the hearing, the Commission shall hear testimony of any person whose testimony may be relevant and shall receive all relevant evidence which may be offered. A person with respect to whom a hearing is held under this section may, in his discretion, be present at the hearing, to testify, and to present and cross-examine witnesses.

7. D.C.Code § 544 provides in relevant part:

. . . If the Commission finds, after the hearing, that the person with respect to whom the hearing was held is mentally ill, and because of the illness is likely to injure himself or other persons if allowed to remain at liberty, the Commission shall promptly report that fact, in writing, to the Superior Court of the District of Columbia. The report shall contain the Commission's findings of fact, conclusions of law, and recommendations. A copy of the report of the Commission shall be served personally on

procedural or evidentiary protection to which he was entitled. Nor does he identify any constitutional or explicit statutory basis that would prevent a change in his status from voluntary inpatient to involuntary inpatient. To the extent that, on the record before us, he claims an absolute right to be free from restraint as a voluntary inpatient upon demand, none exists. *See Kansas v. Hendricks*, —— U.S. ——, ——, 117 S.Ct. 2072, 2079, 138 L.Ed.2d 501 (1997) ("The Court has recognized that an individual's constitutionally protected interest in avoiding physical restraint may be overridden even in the civil context") (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 26, 25 S.Ct. 358, 361, 49 L.Ed. 643 (1905)).

The results of Clark's competency examinations and his evidentiary proceedings revealed, consistently, his continuing mental illness and his dangerousness to himself and others as a result of his mental illness. At the time of his dispositional hearing in the trial court in July 1995, according to his treating psychologist, he "continue[s] to engage in unprovoked acts of violence and inappropriate sexual activity, even within the confines of a maximum security ward." He continues to manifest "bizarre sexual behavior" and "poor impulse control." He suffers from schizophrenia and is an exhibitionist. Because the Commission assessed "[h]is condition [as] chronic and deteriorating," and found that his "potential for violence has been increasing since [his] arrest [for assaulting his counselor]," the trial court had ample evidence to conclude that Clark "remains mentally ill and dangerous to himself and to others," and thus is "likely to injure himself and others if allowed to remain at liberty." Therefore, his indefinite commitment as an involuntary patient is consistent with §§ 21–541 *et seq.* of the Hospitalization of the Mentally Ill Act.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

the alleged mentally ill person and his attorney. An alleged mentally ill person with respect to whom the report is made has the right to demand a jury trial, and the Commission, orally and in writing, shall advise him of this right.
D.C.Code § 21–545 provides in pertinent part:
    (a) Upon receipt by the court of a report referred to in section 21–544, the court shall promptly set the matter for hearing. . . .

(b) . . . If the court or jury finds that the person is mentally ill and, because of that illness, is likely to injure himself or other persons if allowed to remain at liberty, the court may order his hospitalization for an indeterminate period, or order any other alternative course of treatment which the court believes will be in the best interests of the person or of the public. . . .