**In re Evelyn LANIER, Appellant.**

**No. 04–FM–726.**

District of Columbia Court of Appeals.

Argued April 4, 2006.

Decided Aug. 17, 2006.

As Amended Sept. 13, 2006.

---

Patrick T. Hand, Washington, DC, appointed by the court, for appellant.

John M. Howard, Washington, DC, for appellee.

Robert J. Spagnoletti, Attorney General for the District of Columbia, and Catherine J. Motz, Deputy Attorney General, and Tonya A. Robinson, Chief, Mental Health Section, filed a statement in lieu of brief, for the District of Columbia.

Before GLICKMAN and FISHER, Associate Judges, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Evelyn Lanier appeals from an order committing her to the Department of Mental Health Services following a jury trial in May of 2004. She contends that the trial court erred by committing her involuntarily while she was receiving voluntary treatment and by committing her as an inpatient although the District of Columbia Commission on Mental Health (Commission) recommended outpatient treatment. We reject both of appellant's arguments and affirm the judgment of the trial court.

## I.

Appellant has suffered from mental illness for many years and her long history of non-compliance with treatment has led to various voluntary and involuntary hospitalizations. Although she has often failed to comply with treatment, appellant remained fairly stable, receiving voluntary outpatient care for many years while living in a community residential facility where she had been placed by her guardian.[1] In 2003, however, she began to deteriorate and experienced problems in her living situation, mainly due to her refusal to take her medicine or to obey the rules of the residential facility.

On September 4, 2003, appellant's guardian, Stephanie Bradley, was summoned to the residential facility. Appellant, who reportedly had not taken her medication for three days, had locked her-

---

1. For two weeks in 1996, appellant was involuntarily committed to Saint Elizabeths. This appears to be the only previous instance of involuntary commitment other than the two occasions cited in this opinion.

self in the bathroom and was screaming and yelling. Ms. Bradley eventually coaxed her out of the bathroom and into her bedroom, but appellant locked the door. To avoid damage to the property and further disruption to the other tenants, Ms. Bradley called the police. They broke down the door, handcuffed the appellant, and put her in a squad car. This led to the appellant being involuntarily committed to Saint Elizabeths Hospital on an emergency basis. *See* D.C.Code §§ 21–521, –522 (2001) (allowing for the detention, transportation, and commitment on an emergency basis of those believed to be mentally ill and dangerous).

Appellant stayed at Saint Elizabeths until October 16, 2003.[2] After her release, appellant again failed to comply with her treatment regimen. As a result, Ms. Bradley filed a petition for judicial hospitalization on November 4, 2003. *See* D.C.Code § 21–541(a) (2001) (allowing judicial commitment proceedings to be commenced by a legal guardian). The litigation started by this petition is the subject of this appeal.

While the petition for judicial hospitalization was pending, Ms. Lanier remained initially in the residential facility. However, on November 13, 2003, at a routine hearing in the courthouse, Ms. Lanier again behaved in a manner that required her hospitalization. After complaining that she had not been able to talk with her attorney, appellant approached the conservator of her estate in a "menacing" manner and also threatened to put her guardian's "head through the wall." This time, the appellant was taken to the Psychiatric Institute of Washington (PIW). Her guardian testified that, as a matter of internal policy, PIW does not "normally like to take patients who are going to be adjudicated for involuntary hospitalization."

Thus, although Ms. Lanier's transportation to PIW was involuntary, she was persuaded to admit herself for voluntary inpatient treatment and remained there until December 3, 2003.

On December 16th, the Commission held a hearing to evaluate Ms. Lanier, triggered by the filing of the November 4 petition. *See* D.C.Code § 21–542(a) (2004 Supp.) (requiring the Commission to "promptly examine a person alleged to be mentally ill" and "hold a hearing on the issue of [her] mental illness"). In the meantime, appellant had filed a motion to dismiss the petition because her earlier involuntary hospitalizations had been converted to "voluntary" and she had been discharged from the hospitals. The Commission denied the motion and reported to the Superior Court that it found Ms. Lanier to be mentally ill and likely to injure herself or others if she were not committed. *See* D.C.Code § 21–544 (2004 Supp.). Appellant demanded a jury trial, which was scheduled for May 17, 2004.

Although she returned to residential placement after her commitments, on March 1, 2004, appellant was given twenty-one days' notice to vacate the facility due to her disruptive behavior. To keep the court apprised of appellant's situation, her guardian arranged a status hearing for March 11th. Instead of attending the court hearing as she was required to do, appellant checked herself into PIW.

On May 17th, 2004, while the appellant was still a voluntary patient at PIW, the court began a jury trial on the November 4th petition to hospitalize. Appellant renewed her motion to dismiss, arguing that she could not be involuntarily committed because, as of March 11th, she was a voluntary inpatient. Judge Davis denied ap-

---

**2.** At some time during this period, appellant became a voluntary inpatient.

pellant's motion.[3] On May 19th the jury found that Ms. Lanier was mentally ill and likely to injure herself or others if not committed. *See* D.C.Code § 21–545(b) (2004 Supp.). The following day, the court involuntarily committed her as an inpatient. This timely appeal followed.

## II.

■ Appellant's central argument is that a patient who voluntarily enters a hospital for mental health treatment cannot be the subject of a civil commitment proceeding.[4] Ms. Lanier cites decisions of this court and the United States Court of Appeals for the District of Columbia Circuit, and those cases do contain language that can be used to support her position. We previously have stated that "[t]he Hospitalization of the Mentally Ill Act ... protects the status of voluntary patients by ensuring that their desire for voluntary treatment is honored." *In re Blair*, 510 A.2d 1048, 1050 (D.C.1986) (internal citation omitted). We further noted that "Congress recognized that the forced detention of those seeking voluntary hospitalization would defeat the Act's purpose of encouraging voluntary admissions." *Id.* See also *In re Johnson*, 691 A.2d 628, 633

(D.C.1997) (commenting that a "person becomes immune to the judicial commitment procedures of the Ervin Act" when he voluntarily checks into a hospital for inpatient treatment); *In re Curry*, 152 U.S.App.D.C. 220, 470 F.2d 368 (1972) (patient's emergency involuntary hospitalization was null and void because he had been willing to accept voluntary treatment). Each of these cases arose in markedly different circumstances, however, and they do not confer the broad immunity from judicial process claimed by appellant.

Both *Curry* and *Blair* invalidated emergency, involuntary hospitalizations that had been initiated after the patient sought medical assistance. Jerome Curry appeared at George Washington University Hospital, complained of various symptoms of mental illness, and requested treatment. Despite some ambiguity in the record, the court assumed that he was also willing to accept treatment at Saint Elizabeths. Nevertheless, a doctor executed an application for emergency hospitalization, and Saint Elizabeths admitted him as an involuntary, emergency patient. Reasoning that "the statutory scheme which provides for voluntary admission [D.C.Code § 21–

3. In denying the motion the court aptly stated that "this petition was filed significantly before Ms. Lanier voluntarily admitted herself into PIW and so it's not a situation where someone who was voluntary is then acted upon in an involuntary manner. It's just the opposite. And the court does not understand that to be precluded."

4. Before this appeal could be heard, appellant was released from involuntary commitment. Neither party argues that this appeal should be dismissed as moot, however. In fact, both parties urge us to consider the case on the merits. Appellant is particularly concerned about collateral consequences of her involuntary commitment. Appellant's guardian, Stephanie Bradley, is concerned that a similar situation—with the appellant voluntarily committing herself to thwart a petition for invol-

untary commitment—may occur in the future. *See In re Johnson*, 691 A.2d 628, 631–32 (D.C. 1997) (noting that the issue was likely to recur yet evade review and, therefore, rejecting a mootness argument); *In re Blair*, 510 A.2d 1048, 1049 n. 1 (D.C.1986) (commenting that the collateral consequences of involuntary civil commitment preclude a mootness finding); *In re Curry*, 152 U.S.App. D.C. 220, 223, 470 F.2d 368, 371 (1972) (rejecting a mootness argument because of "continuing collateral consequences" and the likelihood of recurrence). We are satisfied that "this case presents important questions concerning the implementation of the Ervin Act that would consistently evade appellate review and frustrate our trial courts unless we resolve today the underlying legal dispute." *Johnson*, 691 A.2d at 632.

511] was created so as to encourage admission without legal proceedings," 152 U.S.App.D.C. at 224, 470 F.2d at 372 (citation in original), the District of Columbia Circuit agreed with Curry's argument "that his emergency, involuntary hospitalization was invalid because he was willing to accept voluntary treatment." *Id.* at 223, 470 F.2d at 371.

Tyrone Blair had been receiving psychiatric counseling as an outpatient, but one day he confided to his nurse that he needed help. She saw that he had deteriorated and concluded that he needed immediate hospitalization. Mr. Blair agreed to go to the hospital as a voluntary patient if the nurse accompanied him. She was willing to do so, but first asked the health center psychiatrist to evaluate him. The doctor agreed that immediate hospitalization was necessary, but feared that Blair would sign himself out of the hospital once he became sober. The doctor therefore completed an application to admit Mr. Blair on an emergency, involuntary basis. Neither the psychiatrist nor the nurse informed Mr. Blair of the decision to admit him as an involuntary patient. 510 A.2d at 1049–50. Relying on *Curry*, we concluded that "the factual setting of this case compel[led] us to set aside Blair's emergency, involuntary admission to St. Elizabeths." *Id.* at 1050.

Although both opinions contain some broad language, neither *Curry* nor *Blair* addressed the situation presented in this case. A petition for long-term hospitalization was filed before Mr. Curry was released by the Commission on Mental Health, but he did not challenge the validity of that petition. 152 U.S.App.D.C. at 222, 470 F.2d at 370. Similarly, the issue did not arise in *Blair*. 510 A.2d at 1050.

Indeed, we have found no case where this court has extended *Curry* or *Blair* beyond the context of an emergency, involuntary hospitalization.[5]

In a more recent case, Bernard Johnson persuaded the trial court to dismiss a petition for judicial hospitalization because he already was a voluntary outpatient. The government appealed, and we observed that "Johnson's reliance on *Blair* does not work." *Johnson*, 691 A.2d at 633. We concluded "that the trial court erred in dismissing the petition to commit Johnson as an involuntary outpatient because of Johnson's status as a voluntary outpatient." *Id.* at 635. In *Johnson*, which represents our most comprehensive analysis of this issue, this court focused on two key considerations: (1) the chilling effect of allowing a petition for involuntary hospitalization, and (2) the patient's amenability to treatment.

As we explained in *Johnson*, "[i]n emphasizing the importance of encouraging mentally ill individuals to seek treatment proactively, *Blair* recognized the extraordinary chilling effect of allowing the hospital to detain, indefinitely, an individual who was admitted of her own free will." 691 A.2d at 633. In *Blair*, as in *Curry*, the proceedings for involuntary hospitalization were initiated only after the patient commendably had brought his condition to the attention of doctors and sought their help. In the present circumstances, by contrast, we perceive no chilling effect. The petition for judicial hospitalization had been filed *before* Ms. Lanier admitted herself for treatment. The filing of that petition obviously did not deter her from seeking assistance; indeed, one might infer from this record that it motivated her to become

---

**5.** Even if the court in *Curry* intended its opinion to be read more broadly, it was issued on August 21, 1972, and does not bind us. *See* *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971)

(opinions of the District of Columbia Circuit issued after February 1, 1971, are not binding upon this court).

a voluntary inpatient. Whether it was an original strategy or not, appellant clearly is arguing now that a clever (or well-advised) individual may defeat a petition for judicial hospitalization simply by admitting herself to the hospital. The holdings in *Curry* and *Blair* do not sweep so broadly.

Although in *Johnson* we distinguished *Blair* "by stressing the distinction between outpatient and inpatient status, [we emphasized that] the ultimate distinction is amenability to treatment while in outpatient or inpatient status—an amenability that can be withheld easily by a voluntary outpatient and at least theoretically, perhaps even actually, by a voluntary inpatient." *Id.* at 635. We did not decide the matter, but predicted that "there would appear to be room, even under *Blair*, for a petition to seek involuntary commitment of a voluntary inpatient who no longer is 'amenable to voluntary treatment.'" *Id.* (quoting *Blair*, 510 A.2d at 1050).[6] Indeed, later that same year, this court "conclude[d] that, based on the record before us, nothing in the Hospitalization of the Mentally Ill Act, ... or the Constitution precludes changing Clark's status from a voluntary inpatient to an involuntary inpatient." *In re Clark*, 700 A.2d 781, 784 (D.C.1997).

The facts of *Clark* were unusual,[7] but our decision in that case rejected the same arguments made by appellant here. Clark moved to dismiss a petition "on the ground that he was a voluntary inpatient, and thus, a petition for judicial hospitalization was invalid." *Id.* at 783. That motion was denied, and he was committed after a trial. Invoking *Blair*, he maintained on appeal that "his status may not be changed from that of a voluntary patient to that of an involuntary patient." *Id.* at 785. We rejected that argument because the record "demonstrated that Clark no longer was amenable to treatment as a voluntary inpatient." *Id.* at 786. Ultimately this court held that "his indefinite commitment as an involuntary patient is consistent with §§ 21–541 *et seq.* of the Hospitalization of the Mentally Ill Act." *Id.* at 787.

Ms. Lanier's story is less dramatic than Clark's, but the record is replete with instances of her disobeying doctor's orders while being voluntarily treated, refusing to take her prescribed medicines, and declining to participate in programs to help her assimilate into society. Periods of stability achieved through hospitalization were followed by episodes of deterioration after her release. This record thus shows that appellant was not consistently amenable to voluntary treatment, and neither *Curry* nor *Blair* prevented the court or her guardian from taking the responsible course of evaluating her condition by means of a petition for judicial hospitalization.

The fact that appellant had voluntarily admitted herself for treatment is important, however. This information was brought to the attention of the jury as another factor to consider when deciding whether Ms. Lanier was likely to injure herself or others if not committed. *See* D.C.Code § 21–545(b)(2). Her counsel

---

6. *Blair* and *Curry* also stressed the importance of amenability to treatment. *See Blair*, 510 A.2d at 1050 (stating that an individual must seek and be amenable to treatment before subsequent steps toward involuntary commitment are invalid); *Curry*, 152 U.S.App. D.C. at 224, 470 F.2d at 372 (invalidating the appellant's emergency involuntary commitment because "nothing in the record indicates that he resisted treatment").

7. Clark had been a voluntary inpatient at Saint Elizabeths for many years. He assaulted a hospital employee, but was found incompetent to stand trial. The Commission then filed a petition for judicial hospitalization. 700 A.2d at 782–83.

emphasized in closing argument that Ms. Lanier had been receiving mental health treatment for many years and then was a voluntary patient at PIW. Nevertheless, the jury found by clear and convincing evidence that she was likely to injure herself or another, and appellant has made no claim of instructional error. We reject her argument that the proceedings were void *ab initio* because she was a voluntary patient at the time of trial.

## III.

 Appellant also asserts that the trial court abused its discretion by committing her to inpatient treatment although a treating psychiatrist and the Commission had recommended that she be committed as an outpatient. The governing statute requires the court to order the form of commitment it "believes is the least restrictive alternative consistent with the best interests of the person and the public." D.C.Code § 21–545(b)(2) (2003 Supp.). It is clear that the court heeded the statutory restriction because after the hearing on May 20th, Judge Davis made an explicit finding "that inpatient treatment is the least restrictive treatment alternative and necessary at this time.  . . ."

■ In previous cases, we have reviewed the trial court's decision regarding the "least restrictive alternative" to ensure that it is supported by the record. *See In re Perruso*, 896 A.2d 255, 262 (D.C.2006) (holding that the evidence "was sufficient to establish that the least restrictive treatment alternative for appellant was inpatient commitment"); *In re Gaither*, 626 A.2d 920, 925 (D.C.1993) ("Because the court's decision was abundantly supported by the evidence, reversal is not warranted." (citing D.C.Code § 17–305(a))). Appellant's argument fails at the outset, however. Ms. Lanier has the duty to present us with a record sufficient to demonstrate the error of which she complains. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111–12 (D.C.1982). Nevertheless, she has not provided a transcript of the commitment hearing. We therefore cannot find that the court's ruling was "plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (2001).

For the reasons discussed, we reject appellant's arguments. The judgment of the Superior Court is hereby

*Affirmed.*