**Jill FLAX, Appellant**

v.

**David SCHERTLER, et al., Appellees.**

**No. 06–CV–37.**

District of Columbia Court of Appeals.

Argued March 29, 2007.

Decided Nov. 15, 2007.

Jill Flax, pro se.

John T. May, Washington, DC, for appellees.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

Plaintiff-appellant Jill Flax, personal representative of the estate of her late husband Howard Flax ("the Estate"), sued defendants-appellees David Schertler, Bar-

ry Coburn, Lisa Fishberg, and Coburn & Schertler LLP ("the Lawyers"), alleging that they breached the applicable standard of care in handling a lawsuit brought against Mr. Flax and others by one Benson Fischer ("the Fischer litigation" or the "underlying litigation"). The Lawyers had defended Mr. Flax in the Fischer litigation and also pursued certain counterclaims on his behalf against Fischer, Fischer Brewing Company, the investment banking firm of Laidlaw & Co. ("Laidlaw"), and Laidlaw employee Douglas Miscoll ("Miscoll"). Ms. Flax contends that the Lawyers negligently pursued counterclaims and third-party claims that failed as a matter of law and failed to plead other claims that, purportedly, were viable and would have resulted in judgments that would not have been dischargeable in (Fischer's eventual) bankruptcy.

The trial court entered judgment in favor of the Lawyers, dismissing the claims against the Lawyers that Ms. Flax set out in her Amended Complaint and denying her motion to file a second amended complaint. In the instant appeal, Ms. Flax contends that Judge Kravitz ignored certain of her claims, unduly restricted discovery, abused his discretion in declining to revisit or clarify certain rulings and in denying Ms. Flax's motion to amend her complaint for a second time, prematurely granted summary judgment to the Lawyers, failed to make accommodations in light of Ms. Flax's *pro se* status during a portion of the litigation, and was biased in favor of the Lawyers and should have recused himself.

We agree with Ms. Flax that the trial court too narrowly construed or overlooked some of her allegations regarding the Lawyers' failure to bring an alternative fraud-related claim or claims in the underlying litigation. The court granted summary judgment in a manner that foreclosed *all* of Ms. Flax's fraud-related claims, without determining whether additional time was warranted to permit her to conduct discovery as to her claim that the Lawyers negligently failed to bring fraud-in-the-inducement claims in the Fischer litigation. We remand the case to the trial court so that the trial judge may make this determination. We uphold the grant of summary judgment as to the other claims that comprised Ms. Flax's Amended Complaint, and we likewise affirm the trial court's denial of Ms. Flax's motion for leave to file a second amended complaint.

## I. Procedural History

We begin by reciting the tortuous procedural history of this case, some of which is set out in our opinion in *Fischer v. Estate of Howard L. Flax*, 816 A.2d 1, 4–5 (D.C. 2003). In 1995, Mr. Fischer, principal owner of Fischer Brewing Company, needed financing to expand the marketing and production of one of the company's beer products. Mr. Fischer enlisted Mr. Flax, a friend, to look for an investor and, both verbally and in a February 21, 1996 letter agreement, agreed to pay Mr. Flax a substantial finder's fee (fifteen percent of future company stock, with an anticipated value of $1.5 million) if Mr. Flax succeeded in obtaining the desired financing. Mr. Flax prepared a promotional package that was sent to Laidlaw in early March, 1996, and, later during the same month, Mr. Flax and Fischer met with Laidlaw representatives, including Mr. Miscoll. Laidlaw liked Fischer's proposal and began assembling a financial package that would include a public stock offering. On April 12, 1996, Fischer signed an agreement with Laidlaw. Fischer thereafter told Mr. Flax that he would not pay him the amount promised or anything other than a nominal amount because, Fischer claimed, he had learned that National Association of Security Dealers ("NASD") rules would likely

bar him from paying out more than fifteen percent of the gross offering proceeds to Mr. Flax and Laidlaw combined (meaning that if Fischer paid what he had promised to Mr. Flax, that would leave nothing to pay Laidlaw's commission). Not surprisingly, a dispute ensued between Fischer and Mr. Flax.

Laidlaw learned of the Fischer/Flax dispute and, according to appellant, insisted that the dispute be resolved "as a condition of the deal moving forward." On or about May 1, 1996, Miscoll claimed to have discovered a letter and promotional package sent to Laidlaw on Fischer's behalf by one Howard Reissner on March 6, 1996, a few days before Laidlaw received the promotional package that Mr. Flax had prepared. Laidlaw announced that it would recognize Reissner as the finder and pay him a finder's fee if the financing was provided. Eventually, however, Laidlaw withdrew its financing offer, explaining that delays had caused the participants to miss the market window for sales of brewery stocks. In contrast, Ms. Flax cited to the[5] trial court deposition testimony, from Mr. Flax and another individual, that they had been informed that the Laidlaw financing deal failed because "one of Laidlaw's bridge lenders had withdrawn because his due diligence found that Fischer had misrepresented his company's sales."

After the financing deal fell through, Fischer sued Mr. Flax and various of his associates, blaming them for loss of the deal. Mr. Flax, represented by the Lawyers, filed a number of counterclaims and third-party claims against Fischer, his company, Laidlaw and Miscoll. The trial court (the Honorable Steffen Graae) entered a default judgment against Fischer on his claims, dismissed Mr. Flax's counterclaim against Fischer and third-party claims against Laidlaw and Miscoll that alleged conspiracy to defraud, and also dismissed Mr. Flax's other third-party claims against Laidlaw and Miscoll. Mr. Flax's dismissed fraud claims were based on allegations that Fischer, with the knowledge of Laidlaw and Miscoll, had fabricated the Reissner letter to deprive Mr. Flax of his finder's fee. Notably, Judge Graae found that Fischer had indeed fabricated the Reissner letter, well after its purported March 6, 1996 date. However, Judge Graae dismissed the fraud counterclaim against Fischer on the ground that Mr. Flax had asserted from the outset that the Reissner letter was a fake and thus had never relied on it to his detriment. Judge Graae dismissed the conspiracy-to-defraud claims against Laidlaw and Miscoll on the grounds that there was no evidence that Miscoll knew or should have known that the Reissner claim was fraudulent, and that Mr. Flax had not met his burden of showing that Fischer or Miscoll "participated in or induced the wrongful actions of the other pursuant to an agreement."

Ruling on Mr. Flax's other counterclaims against Fischer, Judge Graae entered judgments in favor of Mr. Flax for $300,000 for the *quantum meruit* value of the work that Mr. Flax performed for Fischer, and for a total of over $221,000 in attorney's fees and punitive damages on account of Fischer's bad faith litigation. Mr. Flax died before the Fischer litigation was resolved. Before his Estate could collect any of the judgment amounts, Fischer Brewing Company went out of business and Mr. Fischer himself filed for bankruptcy protection.

Dissatisfied, in September, 2003, Ms. Flax sued the Lawyers. In her Amended Complaint, filed on May 25, 2004, she alleged *inter alia* that the Lawyers were negligent in their handling of the Fischer litigation by "failing to plead and prove separate fraud claims against Miscoll,

Laidlaw and Fischer, which ultimately would have been sustained by the court and yielded substantial compensatory and punitive damages, which would have been collectible and [apparently unlike the quantum meruit claim] non-dischargeable in Bankruptcy"; and by "fail[ing] to advise Plaintiff that the judgments [the Lawyers] obtained against Fischer would be potentially dischargeable in Bankruptcy and ... to advise Plaintiff and Flax that judgments for certain intentional torts would not be dischargeable in Bankruptcy."

On April 1, 2004, the Lawyers moved for summary judgment. The trial judge, the Honorable Neal Kravitz, held a hearing on the motion on July 22, 2004, and, a few days later, on July 26, 2004, issued his written order granting partial summary judgment in favor of the Lawyers. Judge Kravitz first discussed Ms. Flax's claims that the Lawyers failed to present evidence "that her late husband relied to his detriment upon Fisher's misrepresentations and that Fischer therefore committed an actionable fraud" and that "Laidlaw and Miscoll aided and abetted Fischer's fraud and participated in a conspiracy to defraud." Judge Kravitz noted that to succeed on a fraud claim, a plaintiff must show, among other things, action taken in reliance upon a fraudulent representation. Judge Kravitz found that the "record establishes without genuine dispute that Flax has taken the position throughout [the underlying litigation] that the Reissner letter was a fake." Judge Kravitz quoted Judge Graae's finding that "Flax's own evidence completely undermines and contradicts the [reliance] element of the

fraudulent misrepresentation claim." Judge Kravitz reasoned that Ms. Flax "ha[d] not proffered any evidence, either in her briefs or at oral argument, that would add to the evidence that was before Judge Graae in the underlying litigation and that would tend to show that Howard Flax relied on any material misrepresentation of fact made by Fischer." He found "no basis upon which to expect that further discovery would yield any evidence tending to show that Flax relied upon Fischer's alleged misrepresentations." Judge Kravitz also concluded that "the absence of any proof of Flax's reliance prevented the plaintiff, as a matter of law, from successfully prosecuting claims against Laidlaw and Miscoll for aiding and abetting Fischer's alleged fraud and for participating along with Fischer in a civil conspiracy to commit fraud." Accordingly, Judge Kravitz granted the Lawyers' motion for summary judgment on Ms. Flax's "fraud-related claims."

Turning to Ms. Flax's claim that the Lawyers "fail[ed] to pursue 'other intentional tort claims' against Laidlaw, Miscoll, and Fischer," Judge Kravitz noted that Ms. Flax's counsel had explained at oral argument that the claim that should have been filed was malicious prosecution. As to that claim and also as to Ms. Flax's claim that the Lawyers failed to advise that the "judgment against Fischer in the underlying action would be dischargeable in bankruptcy, while any judgments she might have obtained for intentional torts against Fischer, Laidlaw, or Miscoll would not be dischargeable and might have resulted in an award of punitive damages,"[1]

---

1. We note, in passing, that it is not settled in our jurisdiction that a plaintiff prevailing on a claim of attorney negligence may recover lost punitive damages as an element of the damages awarded to compensate for his attorney's failure to pursue a claim that might have resulted in an award of punitive damages.

While this court has not addressed the issue, some other jurisdictions have held that lost punitive damages are not recoverable. *See, e.g., Tri–G., Inc. v. Burke, Bosselman & Weaver*, 222 Ill.2d 218, 305 Ill.Dec. 584, 856 N.E.2d 389 (2006); *Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP*, 30 Cal.4th

Judge Kravitz held that Ms. Flax should have an opportunity through additional discovery to develop evidence in support of her negligence theory. Thus, as to those claims, the trial court initially denied summary judgment.

After Judge Kravitz entered partial summary judgment in favor of the Lawyers, there followed a number of submissions, motions, and rulings. On July 27, 2004, apparently before receiving a copy of the July 26, 2004 partial summary judgment order, Ms. Flax's counsel filed a memorandum to support his oral argument in opposition to summary judgment, asserting (1) that the additional "intentional tort" claim that the Lawyers should have brought against Laidlaw was not malicious prosecution, but instead a claim that Laidlaw had aided and abetted Fischer's bad faith litigation against Flax by supporting Fischer in his false claim that Mr. Flax was not the finder; and (2) that the Lawyers should have brought a claim for fraudulent inducement, based on evidence that Fischer had "never intended to compensate Flax," while Mr. Flax had relied to his detriment on Fischer's promise that Fischer would pay Mr. Flax for his services. The court did not issue a ruling in response to this belated submission.

On October 7, 2004, following a hearing, Judge Kravitz granted the motion by Ms. Flax's counsel for leave to withdraw. The court also stayed discovery. Ms. Flax contends that during the hearing, Judge Kravitz "promised" that he would revisit and clarify the partial summary judgment ruling in light of her counsel's July 27, 2004 memorandum, and that she agreed to her counsel's withdrawal "conditioned upon the court's promise to consider claims not addressed in the partial summary judgment order."

On October 28, 2004, Ms. Flax filed a *pro se* motion asking the court to reconsider its partial summary judgment ruling. She urged the court to reinstate her fraud-related claims based on her allegations of Fischer's alleged fraud-in-the-inducement and Laidlaw's participation in that fraud, to recognize her claim that Laidlaw aided and abetted Fischer's bad faith litigation, and to recognize, in contrast to her former counsel's representations, that she was not pursuing the claim of malicious prosecution that the court had allowed to go forward. In support of her fraudulent-inducement claim, Ms. Flax cited evidence, from the record in the Fischer litigation, of "Fischer's early fraudulent intent," shown by the fact that "[a] mere thirteen days after [Flax's solicitation package was sent to Laidlaw], Fischer, through his deceitful actions, set up Reissner as the finder" and "continued to engage Flax's services in the March through May time frame" even while Fischer was "engaged in surreptitious manipulations behind the scenes." In a one-page order dated November 24, 2004, the court denied the motion to reconsider, explaining that it was "not persuaded that its [partial summary judgment order] was in any way erroneous or that the factual corrections proffered by the plaintiff compel a different result."

On December 17, 2004, Ms. Flax filed her *pro se* motion for clarification of the court's November 24, 2004 ruling. She

1037, 135 Cal.Rptr.2d 46, 69 P.3d 965 (2003); *see also McMurtry v. Wiseman*, 2006 WL 2375579, *3, 2006 U.S. Dist. Lexis 58140, *7 (W.D.Ky.2006) (referring to the foregoing cases and others as consistent with the "modern trend"); *but see Jacobsen v. Oliver*, 201 F.Supp.2d 93, 101 (D.D.C.2002) (predicting that this court would resolve the issue in favor of the rule that "[a]ttorneys can be liable for exemplary or punitive damages lost ... because of their negligence" (quoting Ronald E. Mallen & Jeffrey M. Smith, 3 LEGAL MALPRACTICE § 20.7, at 136–137 (5th ed. 2000))).

asserted that the court had never ruled on her aiding-and-abetting bad-faith-litigation claim against Laidlaw, and she sought clarification as to whether this claim could go forward. She also re-asserted that the basis of the fraud-related claims she sought to pursue was not reliance on the Reissner letter, but instead Mr. Flax's reliance on "Fischer's promise of payment that was shown to be empty and fraudulent." On December 21, 2004, the court denied the motion for clarification, explaining that its order "needs no clarification."

On April 22, 2005, the Lawyers filed a motion citing a need to "determine what issues actually remain in the case" and asking the court to require Ms. Flax to identify the intentional tort claim or claims that could have been successfully prosecuted against Fischer, Laidlaw and Miscoll and that would not have been dischargeable in bankruptcy, and to restrict Ms. Flax's discovery to discovery designed to establish a *prima facie* basis for those claims. In her *pro se* response, Ms. Flax again asserted that the court had not addressed whether her claims for aiding and abetting bad faith litigation and fraud in the inducement could go forward. She asserted that she "[could] not begin to seek counsel until this Court addresses the outstanding claims." She also accused the court of bias and partiality toward the Lawyers. On May 11, 2005, the court entered an order lifting the stay of discovery, limiting discovery to the claims remaining in dispute following the court's July 26, 2004 order of partial summary judgment, providing that discovery would close on July 31, 2005, and requiring dispositive motions to be filed by August 31, 2005. The court denied the request for clarification of the remaining issues, stating that the partial summary judgment order needed no clarification. The court also concluded that Ms. Flax "should not be required at this stage of the proceed-

ings to identify the intentional torts the defendants failed to prosecute in the underlying litigation or to establish a *prima facie* case before any further discovery is conducted."

After the discovery stay was lifted, the Lawyers sought a date to depose the expert witness that Ms. Flax's then-counsel had previously identified. Ms. Flax advised that she would not be calling her expert witness at trial.

On September 22, 2005, Ms. Flax sought leave to file a second amendment to her complaint to add allegations that the Lawyers negligently (1) filed faulty counterclaims that failed as a matter of law in the underlying litigation; (2) failed to properly advise Flax as to the importance of considering the impact of a possible bankruptcy petition in formulating counterclaims; and (3) failed to provide adequate documentation of all of the attorney's fees she incurred in the Fischer litigation. She also sought to add specific allegations of claims that she contended the court had ignored in its partial summary judgment ruling, *i.e.*, that the Lawyers failed to bring a claim against Laidlaw for aiding and abetting Fischer's proven bad faith litigation; and failed to pursue a claim against Fischer for fraudulent inducement and against Laidlaw for aiding and abetting that fraud. On December 14, 2005, the court denied the motion to amend, reasoning that the case had been pending for over two years, that the motion for leave to amend was Ms. Flax's second request to amend her complaint, that the motion to amend was filed only eight days before the deadline for filing of dispositive motions, that Flax had cited no compelling reason for her failure to raise her additional claims at an earlier stage of the litigation, that granting the motion would significantly delay the litigation, that the Lawyers would be "significantly prejudiced by an order allowing

Flax to add new claims of legal malpractice at such a late stage in the proceedings," and that Flax's lack of expert testimony would be fatal to her claims.

On September 30, 2005, the Lawyers renewed their motion for summary judgment. In an order dated December 14, 2005, the court granted summary judgment in favor of the Lawyers on the remaining claims. The court agreed with the Lawyers that Ms. Flax's withdrawal of her standard-of-care expert was fatal to all of her claims of legal negligence, and that Ms. Flax "has not established that she had any other meritorious claims of intentional torts against Fischer, Laidlaw, or Miscoll, and she therefore has failed to establish that she was injured by any alleged negligence of the defendants in failing to advise her of the bankruptcy consequences of her charging decisions."

On January 12, 2006, Ms. Flax filed her Notice of Appeal to this court "from the order of [the Superior] court entered on the 14 day of December, 2005."

## II. Analysis

Ms. Flax now asserts that, through his various rulings, the trial judge "ignored claims, excessively restricted discovery, prevented Flax from obtaining counsel by virtue of its misrepresentation and seemingly intentional ambiguity, and based its denials on procedure rather than merit," and argues that on this record it was error for the court to enter summary judgment in favor of the Lawyers. She asserts error with respect to the July 26, 2004 partial summary judgment ruling; the court's November 24 and December 21, 2004 rulings on her motions for reconsideration and clarification; the May 11, 2005 order limiting discovery; the December 14, 2005 order denying her motion to amend her complaint for the second time; and the December 14, 2005 summary judgment or-

der. Before turning to the merits of her challenges, we pause to address the Lawyers' argument that Ms. Flax's challenges to all but the December 14, 2005 rulings are foreclosed because she failed to list the orders in her Notice of Appeal.

### A. The Rulings Preserved for Appeal

■ Pointing out that Ms. Flax did not list in her Notice of Appeal any of the trial court's pre-December 14, 2005 rulings, the Lawyers argue that she failed to preserve for appeal any of her allegations of error with respect to those rulings. The Lawyers cite D.C.App. R. 3(c) ("The notice of appeal must ... designate the judgment, order, or part thereof being appealed"), and *Perry v. Sera,* 623 A.2d 1210, 1215 (D.C.1993) ("An appellant should take pains to be precise in this regard [*i.e.,* noting an appeal].... [I]t may be that in litigation two or more potentially appealable orders will be entered. In such a case, the notice of appeal serves to indicate the one in fact appealed.") (citation omitted); *see also Allstate Ins. Co. v. Ramos,* 782 A.2d 280, 287 n. 7 (D.C.2001).

■ It is correct that "[i]f an appellant ... chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer,* 768 F.2d 98, 102 (6th Cir.1985). But, as the foregoing quotation indicates, an appellant may "simply appeal [ ] from the entire judgment." *Id.* It is well-settled in jurisprudence interpreting the Federal Rules of Appellate Procedure (including FRAP 3(c), the federal counterpart to D.C.App. R. 3(c)), that "an appeal of a final judgment draws into question all prior nonfinal rulings and orders." *Nat'l Ecological Found. v. Alexander,* 496 F.3d 466, 476 (6th Cir.2007), *quoting McLaurin,* 768 F.2d at 101; *see also Air Safety v. Roman*

*Catholic Archbishop,* 94 F.3d 1, 6 n.12 (1st Cir.1996). We now clarify that this is the rule in our jurisdiction as well.

Ms. Flax appealed from the "order [singular] of this court entered on the 14 day of December, 2005." This statement is ambiguous in that it fails to specify whether she was appealing from the final judgment order or from the order denying her motion to amend, both dated December 14, 2005. Given our obligation to construe *pro se* rulings liberally, *see Elmore v. Stevens,* 824 A.2d 44, 46 (D.C.2003), we accept Ms. Flax's representation that she appealed the court's final judgment, not merely a ruling merged into that judgment. Accordingly, her notice of appeal drew into question all of the trial court's prior non-final rulings and orders, and they are properly before us.

### B. The Partial Summary Judgment Order

█ As discussed above, the court entered summary judgment in favor of the Lawyers on Ms. Flax's fraud-related claims because the record in the Fischer litigation belied any claim that Mr. Flax had relied to his detriment on the Reissner letter fabricated by Mr. Fischer, and because Ms. Flax proffered no new evidence to the contrary. That reasoning, however, was not a sufficient basis for rejecting Ms. Flax's claim that the Lawyers negligently failed to bring a fraudulent-inducement claim that was not predicated on Mr. Flax's reliance on the fabricated Reissner letter. A fair reading of Ms. Flax's May 3,

2004 opposition to the Lawyers' April 2004 motion for summary judgment is that she was indeed asserting such an alternative fraud claim. In that opposition, Ms. Flax asserted that "Flax expended time and effort to locate financing for Fischer Brewing, in reliance upon Fischer's fraud (Fischer's "intention to name another phony finder for a significantly lesser fee once Flax had found a finder")" and that "[a] reasonable inference suggests Fischer *never* intended to compensate Flax as per the agreement dated February 21, 1996, only one month prior [to fabrication of the Reissner letter]." [2] Ms. Flax again asserted the claim in her June 14, 2004 Supplemental Memorandum of Law in Support of Plaintiff's Opposition to the Defendants' Motion for Summary Judgment. In that filing, she asserted that "Fischer defrauded Flax when he induced Flax into finding investor financing for Fischer Brewing without any intention of ever naming Flax as finder," that "Fischer had no intention of ever fulfilling his promise to compensate Flax as finder," and that "Fischer signed the February 21, 1996 agreement with full knowledge of his intent to renege on his obligation to pay Flax a finder's fee." [3]

█ We agree with Ms. Flax that the trial court appears to have overlooked this alternative fraud-related claim when it dismissed all of her "fraud-related claims" against the Lawyers on the basis of Mr. Flax's lack of reliance on Fischer's misrepresentations, and when it declined to reconsider that ruling in light of Ms. Flax's

---

**2.** This alternative fraud claim was, we think, fairly within the scope of the allegation of Ms. Flax's Amended Complaint that the Lawyers "fail[ed] to plea and prove [a] separate intentional tort claim [ ] against ... Fischer, which ultimately would have been sustained by the court and yielded substantial compensatory and punitive damages."

**3.** Ms. Flax also asserted in her supplemental memorandum opposing summary judgment that the Lawyers had discovered that Fischer "had employed this fraudulent tactic regarding finder's fees on several other business deals," specifically "in a real estate lease for Smallbone Kitchens, naming Fischer's friend, Tom Poppodopolous, as the individual who had preceded the listing agent."

subsequent pleadings.[4] There appears to be no real room for doubt that Mr. Flax undertook his work for Mr. Fischer in reliance on Mr. Fischer's promise of a substantial payment; Mr. Flax "had a compensation agreement [with Fischer] and performed services for Fischer pursuant to that agreement." *Fischer*, 816 A.2d at 6. Moreover, in reviewing the Lawyers' summary judgment motion, the court was required to draw all inferences from facts in the light most favorable to Ms. Flax, as the non-moving party. *See Thompson v. Shoe World, Inc.*, 569 A.2d 187, 189 (D.C. 1990). Further, it is true that Ms. Flax cited only circumstantial rather than direct evidence in support of her fraudulent-inducement claim (*i.e.*, that Fischer knowingly made a false representation to Mr. Flax with the intent at the outset to deceive him). Circumstantial evidence, however, can be enough to withstand summary judgment on fraud-related claims. *See Franklin Inv. Co. v. Homburg*, 252 A.2d 95, 98 (D.C.1969) ("Malice, fraud, deceit and wrongful motive may be inferred from the acts of the defendant and circumstantial evidence. Such intent is seldom admitted and need not be proved by direct evidence").[5] And, we note, as of the date when the court issued its partial summary judgment ruling, Ms. Flax still had a standard-of-care expert who was expected to testify, so her claim that the Lawyers were negligent in failing to bring a fraudulent inducement counterclaim against Fischer was not subject to dismissal for lack of an expert witness.

The Lawyers argued that Ms. Flax had opposed their motion for summary judgment with only conclusory allegations about fraudulent inducement and without the sworn assertions of specific facts that generally are necessary to defeat a motion for summary judgment. *See Avery v. HPCS, Inc.*, 818 A.2d 175, 177 (D.C.2003).[6] But the Lawyers' motion was filed only several months into the litigation, when discovery had not been completed, and Ms. Flax's counsel had submitted an affidavit pursuant to Superior Court Civil Rule 56(f)—a rather bare-bones affidavit, to be sure—describing the discovery that Ms. Flax had conducted and explaining that discovery was still in the preliminary stages and that no depositions had been taken. The trial court had discretion to deny summary judgment at that stage, in light of the Rule 56(f) affidavit and Ms. Flax's opposition, to afford Ms. Flax the opportunity to garner deposition testimony or other sworn evidence that could have enabled her to avoid summary judgment. *See Kibunja v. Alturas, L.L.C.*, 856 A.2d 1120, 1125 (D.C.2004) ("The trial court may deny a motion for summary judgment or grant a continuance to permit discovery 'if the party opposing the motion adequate-

4. In her July 27, 2004 Memorandum To Supplement and Support Plaintiff's Oral Argument Regarding Defendants' Motion for Summary Judgment, for example, Ms. Flax articulated again her fraudulent inducement claim: "Fischer never had any intention to compensate Flax for his services as finder, [but] engaged Flax under false pretenses" and Laidlaw "aid[ed] and abett[ed] Fischer's fraud."

5. *See also Thompson*, 569 A.2d at 190–91 (inferences derived from circumstantial evidence are sufficient to defeat a motion for summary judgment); *Bowles v. Marsh*, 82 A.2d 135, 138

(D.C.1951) ("The fact that the evidence ... was circumstantial does not detract from its probative force. Fraud is frequently not susceptible of direct proof because of its clandestine nature") (quoting *Thomas v. Doyle*, 88 U.S.App. D.C. 95, 187 F.2d 207, 208 (D.C.Cir. 1950)); *Wynne v. Boone*, 191 F.2d 220, 222 (D.C.Cir.1951) ("the sole source for inference of ... deceit may be the circumstances of the transaction").

6. The Lawyers also reminded the court that in her answers to the Lawyers' interrogatories, Ms. Flax had not specifically identified a fraudulent-inducement claim.

ly explains why [in a Rule 56(f) affidavit], at that time point, it cannot present by affidavit facts needed to defeat the motion.' ") (quoting *Strang v. United States Arms Control & Disarmament Agency*, 275 U.S.App.D.C. 37, 864 F.2d 859, 861 (C.A.D.C.1989)); *see also Travelers Indem. Co. v. United Food & Commer. Workers Int'l Union*, 770 A.2d 978, 995–996 (D.C.2001) (although Rule 56(f) affidavit contained only "general allegations of the need for discovery," summary judgment was premature because "other documents filed by the plaintiff ... sufficed to alert the [trial] court of the need for further discovery") (quoting *First Chicago Int'l v. United Exch. Co.*, 267 U.S.App. D.C. 27, 32, 836 F.2d 1375, 1380 (D.C.Cir. 1988)). Notably, as discussed *infra*, the court exercised its discretion in favor of permitting discovery on Ms. Flax's non-fraud-related claims, even though Ms. Flax's explanation about her discovery plans with respect to those claims and assertions regarding their factual basis were no more specific than her statements with respect to her fraudulent-inducement-related claims. In contrast, the court did not exercise its discretion one way or the other with respect to Ms. Flax's fraudu-

lent-inducement-related claim because, as we have concluded, it apparently overlooked that claim.

■ We review a trial court's denial of a request for discovery premised on a Rule 56(f) affidavit for abuse of discretion. *Travelers Indem. Co. v. United Food & Commer. Workers Int'l Union*, 770 A.2d 978, 993 (D.C.2001). We conclude that a remand is warranted because, as we have explained, the trial court did not consider whether Ms. Flax was entitled to avoid summary judgment while she undertook discovery on her fraudulent-inducement-related claims, and because, on the record before us, we "cannot conclude that the facts left the trial court 'with but one option [to] choose' " —namely, to deny further discovery—"without abusing its discretion." *Beard v. South Main Bank*, 615 A.2d 203, 212 (D.C.1992) (Terry, J., concurring) (quoting *Johnson v. United States*, 398 A.2d 354, 364 (1979)).[7] "[T]his court cannot properly substitute its judgment [with respect to] ... a ruling committed to trial court discretion when that discretion—to which the parties had a right—was not exercised." *Wright v.*

7. We conclude that a remand is warranted even though the viability of Ms. Flax's fraudulent-inducement-related claim is far from clear. Although Mr. Flax may have been able to prove in the underlying litigation that Fischer induced him to provide "finder" services by engaging him while never intending to pay him, Ms. Flax's pleadings point to deposition testimony about another factor that may have played a role in Mr. Flax's loss: Laidlaw's bridge lender having withdrawn from the deal based on its due diligence investigation of Fischer's company. As the Lawyers have suggested, this raises the question of whether there was an intervening factor that superseded Fischer's (alleged) fraud-in-the inducement as the cause of Mr. Flax's loss of the finder's fee he anticipated earning.

If the cause of Mr. Flax's loss of a finder's fee was something other than Mr. Fischer's

alleged fraudulent inducement and the chain of events it set off, Mr. Flax could not have recovered on a fraudulent-inducement counterclaim, and Ms. Flax would be unable to show that but for the Lawyer's failure to pursue that counterclaim, the Estate would have had judgment for additional amounts. *See Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C.1985) (to succeed on attorney negligence claim, a plaintiff must show that the attorney's omission "resulted in and was the proximate cause of a loss to the client"). She therefore could not prevail on her fraud-related claims against the Lawyers. *See Niosi v. Aiello*, 69 A.2d 57, 60 (D.C.1949) ("Unless a party has a good cause of action against the party proposed to be sued, the first party loses nothing by the conduct of his attorney even though the latter were guilty of gross negligence").

*United States*, 508 A.2d 915, 920 (D.C. 1986).

 Ms. Flax also takes issue with the way in which the trial court, in its July 26, 2004 partial summary judgment ruling, handled her claim that the Lawyers were negligent in failing to pursue "other intentional tort" claims against Laidlaw and Miscoll. The court's ruling explains that, at the hearing on the Lawyers' motion for summary judgment, Judge Kravitz specifically asked Ms. Flax's counsel to identify the "other intentional tort" claim that Ms. Flax contended the Lawyers should have pursued. Her counsel told the court that the claim was one for malicious prosecution. Judge Kravitz relied on counsel's representation in allowing Ms. Flax to go forward (pending additional discovery) with her claim related to the Lawyers' failure to pursue a malicious prosecution claim. Ms. Flax does not contend that this ruling was erroneous at the time it was made, but she faults the court for not revisiting its ruling upon review of the pleadings that Ms. Flax or her then-counsel filed after the partial summary judgment order was issued. In those pleadings, Ms. Flax repeatedly explained that the "other intentional tort" claim that the Lawyers failed to plead was not malicious prosecution, but instead a claim that Laidlaw aided and abetted Fischer's bad faith litigation. She contends that the trial judge erred in not modifying its partial summary judgment ruling and permitting her to conduct discovery as to that claim.

We cannot fault the trial court for holding Ms. Flax to her counsel's representation as to what claim she intended to pursue. We have held repeatedly that the "acts and omissions of counsel are imputed to the client even though detrimental to [her] ... [unless] the conduct of counsel is outrageously in violation of either [her] express instructions or [counsel's] implicit

duty to devote reasonable efforts in representing his client." *Railway Express Agency, Inc. v. Hill*, 250 A.2d 923, 926 (D.C.1969) (noting that this rule is "necessary for the orderly conduct of litigation"); *see also Da Costa v. Ruben*, 225 A.2d 309 (D.C.1967); *Jones v. Roundtree*, 225 A.2d 877 (D.C.1967); *Askew v. Randolph Carney Co.*, 119 A.2d 116 (D.C.1955). Although Ms. Flax advised the trial court that her counsel was deficient in his responses to the court's questions at the hearing on the summary judgment motion, she did not assert that her counsel ignored her instructions as to what intentional tort claim she contended the Lawyers should have pursued, or that her counsel failed to devote reasonable efforts in representing her. Certainly, it is necessary for the "orderly conduct of litigation" that the trial court be able to rely on counsel's representations at important junctures of litigation (such as a summary judgment hearing) with respect to matters that are central to the represented party's case (such as what negligent omission the party is alleging).

In her brief to this court, Ms. Flax asserts that her then-counsel was "completely unprepared" at the July 22, 2004 hearing on the Lawyer's motion for summary judgment and that counsel "had pleaded the [malicious prosecution] claim off the cuff without adequate knowledge of her case," allegations that, if presented to the trial court, might have warranted reconsideration of the relevant portions of the partial summary judgment ruling. But, in any event, we are not persuaded that Ms. Flax suffered harm from the court's having "ignored" her aiding and abetting bad faith litigation claim in its partial summary judgment ruling. As described *supra*, in that ruling, the court left the door open—and permitted discovery to proceed with respect to—Ms. Flax's claim that the Lawyers failed to advise that "any

judgments she might have obtained for intentional torts against Fischer, Laidlaw, or Miscoll would not be dischargeable and might have resulted in an award of punitive damages." We think this claim was sufficiently broad that pursuing discovery as to it could have entailed discovery as to the viability of the "ignored" aiding and abetting bad faith litigation claim. Notably, when the Lawyers filed their motion asking the court to require Ms. Flax to identify what intentional torts she had in mind in pursuing this remaining claim, the court denied their request. As a result, even though the court also explicitly limited discovery to the claims that remained after the July 26, 2004 partial summary judgment ruling, Ms. Flax was left with latitude to garner evidence that had the Lawyers pursued the aiding-and-abetting-bad-faith-litigation claim or some other intentional-tort claim, the claim might have resulted in an award of punitive damages.[8]

### C. The Orders Denying Clarification of the Court's Rulings

■ Ms. Flax asserts that she was prejudiced by being without counsel during much of the trial court litigation. She contends that during the October 7, 2004 hearing on Flax's counsel's motion to withdraw, "Flax secured a promise from Judge Kravitz to give consideration to the claims ignored in his July 26, 2004 order" and the court "represented its intent to address additional claims but failed to follow through." She asserts that she agreed to her counsel's withdrawal only after the court "promised" to revisit and clarify its

partial summary judgment ruling,[9] and she argues that the trial judge thereafter abused his discretion when he repeatedly refused to reconsider and clarify its order. We are unable to evaluate this claim, and therefore decline to address it, because Ms. Flax has not provided us with a transcript of the hearing at which the "promise" she describes purportedly was made.[10] *See* D.C.Code § 17–305(a); D.C.App. R. 10(b)(2); *In re Lanier*, 905 A.2d 278, 284 (D.C.2006) (appellant "has the duty to present us with a record sufficient to demonstrate the error of which she complains").

■ Ms. Flax further contends that the court's orders denying her motion for reconsideration of the partial summary judgment ruling and correction of the record and denying her request for clarification resulted in her being unable to obtain new counsel to represent her in this litigation. She blames the court for "refusing to clarify the claims that remained discoverable," and asserts · that without the requested clarification, she was rendered unable to explain to potential new counsel what claims remained in the litigation and to conduct effective discovery. We are wholly unpersuaded by this argument. This court has experienced no particular difficulty in reviewing and understanding the trial court's "unclarified" rulings, and potential new counsel, we presume, would have had no more difficulty. While it is true that counsel for the Lawyers also asked the trial court to "determine what

---

**8.** And because the court's ruling limiting discovery left Ms. Flax with the considerable latitude that we have described, we reject Ms. Flax's additional argument that the court unduly restricted discovery.

**9.** The record indicates, however, that Ms. Flax threatened "to file a Bar Grievance against [her] counsel before the . . . Board on

Professional Responsibility." We think that her counsel's withdrawal may have been inevitable at that point.

**10.** Ms. Flax asserts in her brief that the hearing on the motion to withdraw was a "sealed hearing," but does not state whether she requested that the transcript be unsealed.

issues actually remain in the case," their request appears to reflect uncertainty not about the court's prior rulings, but instead about what was covered by the broad allegation in Ms. Flax's Amended Complaint about the Lawyers' failure to advise that "any judgments [Flax] might have obtained for intentional torts against Fischer, Laidlaw, or Miscoll would not be dischargeable and might have resulted in an award of punitive damages." That broad remaining claim, as we have discussed *supra*, preserved for Ms. Flax some latitude in conducting her discovery and, we think, should have facilitated the task of potential new counsel in thinking about how Ms. Flax's claims that had survived summary judgment might be pursued. Thus, we cannot agree that Ms. Flax was prejudiced by the court's rulings denying her requests for clarification.

## D. The Order Denying the Motion to Amend

This court reviews a trial court's decision to permit or deny an amendment of pleadings for abuse of discretion. *See Briggs v. Israel Baptist Church*, 933 A.2d 301, 2007 D.C.App. Lexis 580 (D.C.2007). Our task is to "examine [ ] the record and the trial court's determination for those indicia of rationality and fairness that will assure it that the trial court's action was proper." *Johnson v. United States*, 398 A.2d 354, 362 (D.C. 1979). Although leave to file an amended complaint shall be freely given "when justice so requires," *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 501 (D.C.1994) (quoting Super. Ct. Civ. R. 15(a)), our case law recognizes that "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, and undue preju-

dice to the opposing party, are all valid grounds for refusing to allow amendment." *Howard University v. Good Food Services, Inc.*, 608 A.2d 116, 120 (D.C.1992). As in *Howard*, we have found no abuse of discretion and have upheld a trial court's order denying leave to amend a complaint where the plaintiff "had all the necessary facts" to state the new claims it seeks to assert at the time it filed its previous complaint, *id.*; where adding a new theory of liability would prejudice the defendant "by causing additional discovery time" and expense, could "result [ ] in a fourth party complaint against [defendant's] liability insurance carrier," and "would delay the pretrial conference and trial," *id.* at 121; and where the plaintiff "failed to put forth any satisfactory reason for the delay in amending its complaint," *id.* at 122 (internal quotations and citation omitted). We have recognized that the moving plaintiff's lack of "bad faith or dilatory motive" in seeking to amend her complaint "provide merely a sufficient and not a necessary basis to deny a motion to amend." *Id.* at 121–22.

Here, considering all these factors, we cannot say that Judge Kravitz abused his discretion in denying Ms. Flax's motion to amend. Ms. Flax has cited no reason why her first Amended Complaint, which she filed when she had the benefit of counsel, could not have included the entirely new claims that she sought to add through a second Amended Complaint (claims that the Lawyers negligently pursued claims that failed as a matter of law, and failed to seek recovery of certain attorney's fees that Mr. Flax incurred in consulting with a securities attorney about NASD rules). The other purportedly "new" claims that Ms. Flax sought to add [11] were already fairly covered by the

---

11. These included claims that the Lawyers failed to properly advise Flax as to the impor-

tance of considering the impact of a possible bankruptcy petition in formulating counter-

broad claims in Ms. Flax's first Amended Complaint. Moreover, as the court ruled in its final summary judgment order, Ms. Flax had no standard-of-care expert to support her claims of negligence. These were valid reasons for denying leave to amend the complaint so as to add additional negligence claims.[12] *See Bennett v. Fun & Fitness, Inc.*, 434 A.2d 476, 479 (D.C. 1981) (court may consider the merit of the proposed new claim in determining whether to grant leave to amend).

Furthermore, as the trial court noted, the case had been pending for two years and discovery had already closed when Ms. Flax sought to add her new claims. Allowing the new claims would have required not only a re-opening of discovery (as Ms. Flax acknowledges), but also, in all likelihood, a delay in the scheduled trial date. A court does not abuse its discretion in considering the likelihood of delay as a factor disfavoring leave to make a successive amendment to a complaint, because delay "prejudices not only the defendant but also the ability of other persons … to utilize the [judicial] system." *Perry v. Sera*, 623 A.2d at 1219. Ms. Flax argues that if the court had clarified what claims remained at issue, she would have been able earlier to obtain replacement counsel, conduct adequate discovery and proceed without delay, so that it was not fair to deny her motion on the ground that amendments to the complaint would delay the litigation and cause a reopening of discovery. As already discussed, we are not persuaded by Ms. Flax's argument that her litigation efforts were stymied by the court's orders denying her requests for clarification, and the argument is equally unavailing to support her contention that the court abused its discretion in denying her request for leave to amend her complaint.

### E. The Final Summary Judgment Order

The trial court cited a number of reasons why summary judgment was warranted as to Ms. Flax's claims that had not already been dismissed through the partial summary judgment ruling. We need not discuss them in any detail here, because we agree that the fatal flaw in Ms. Flax's case was the lack of an expert witness who would opine that the Lawyers breached the standard of care. "[I]n a legal malpractice action, the plaintiff must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982).[13] "The kind of care and skill that can be found within the jury's common knowledge may include typical failures to act; for example, allowing the statute of limitations to run on the client's claim [ ], or permitting entry of a default against the client…." *Id.* at 342.

claims; failed to bring a claim against Laidlaw for aiding and abetting Fischer's proven bad faith litigation; and failed to pursue a claim against Fischer for fraudulent inducement and against Laidlaw for aiding and abetting Fischer's fraud.

12. And, as we discuss *infra*, the aiding and abetting claims that Ms. Flax sought to add were only arguably cognizable in this jurisdiction.

13. Ms. Flax argues that the trial court focused on the "procedural issue of an expert witness." But, in an attorney negligence action, the necessity for expert testimony is far more than merely a "procedural or technical requirement." Expert testimony generally is necessary to prove that a lawyer's performance was below the standard of care and that the lawyer's alleged negligence was the "proximate cause of a loss to the client," *Chase*, 499 A.2d at 1211, which are essential elements of the claim for attorney negligence.

■ We agree with the trial judge that the allegations of attorney negligence in the Amended Complaint do not relate to matters that fall within the "common knowledge" exception to the requirement for expert testimony. To understand whether the Lawyers were negligent in failing to bring one or more additional intentional tort claims or in failing to advise Flax about the potential impact of a bankruptcy petition, and whether a loss to Mr. Flax was occasioned by their failure to do so, a jury would need to understand the elements of each tort, the measure of available damages, the availability and strength of the proof in support of the claim(s), the validity of the Lawyers' reasoning that lay behind any choices they made about claims to pursue, what types of debts were dischargeable under bankruptcy law at the time the Lawyers prepared their counterclaims, and many other factors that an expert who is an expert trial lawyer would understand, but that would not likely have been within the common knowledge of a

jury. Cf. Mills v. Cooter, 647 A.2d 1118, 1122 (D.C.1994) (noting that there was expert testimony at trial that established "that reasonable attorneys could differ with regard to the feasibility and propriety of a suit against" the individuals that the clients believed their attorneys should have sued). The trial judge did not err or abuse his discretion in dismissing Ms. Flax's remaining claims because she had no legal expert who could evaluate the Lawyers' performance and opine as to whether they had breached the standard of care and had occasioned a loss to the Estate.[14]

■ Finally, we note that, as the United States Court of Appeals for the District of Columbia Circuit recognized in *Halberstam v. Welch*, 227 U.S.App. D.C. 167, 705 F.2d 472, 479 (D.C.Cir.1983), "[t]he separate tort of aiding-abetting has not yet, to our knowledge, been recognized explicitly in the District."[15] The uncer-

---

**14.** Ms. Flax asserts that she was unduly prejudiced by her *pro se* status and the court's not having advised her earlier that expert testimony would be required, but we cannot agree. *See MacLeod v. Georgetown Univ. Med. Ctr.*, 736 A.2d 977 (D.C.1999) (holding that the trial court had no duty to apprise *pro se* litigant of defects in his motion because, while a judge may provide a *pro se* litigant technical assistance, a *pro se* litigant can expect no special treatment from the court, and must not seek concessions because of inexperience and lack of trial knowledge and training). "While it is true that a court must construe pro se pleadings liberally, . . . the court may not act as counsel for either litigant." *Bergman v. Webb (In re Webb)*, 212 B.R. 320, 321 (8th Cir. BAP 1997) (rejecting *pro se* petitioner's argument that the court "should have advised her what other documents she was required to produce"). Moreover, the record indicates that Ms. Flax ably directed her litigation at many turns, and she has shown herself in her briefs and oral argument to be intelligent, articulate and sophisticated. *Cf. Reid v. Checkett & Pauly*, 197 F.3d 318, 320 (8th Cir.1999) (citing fact that plaintiff was an

"intelligent, experienced, and sophisticated pro se litigant" in upholding dismissal of *pro se* complaint).

**15.** *See also Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 181, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (observing that the doctrine of aiding and abetting tortious conduct "has been at best uncertain in application," that "in some States, it is still unclear whether there is aiding and abetting tort liability of [this] kind," and that "the leading cases applying this doctrine are statutory securities cases, with the common-law precedents 'largely confined to isolated acts of adolescents in rural society' " (quoting *Halberstam*, 705 F.2d at 489)). Although the *Halberstam* court predicted that this court would recognize a tort of aiding and abetting tortious conduct, we have not done so to date, and we are not bound by that court's ruling. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) ("As this court on February 1, 1971, became the highest court of the District of Columbia, no longer subject to review by the United States Court of Appeals, we are not bound by the decisions of the United

tainty, at the time of the underlying litigation, about whether this court would recognize the aiding-and-abetting-bad faith-litigation claim that Ms. Flax contends should have been brought as a third-party claim against Laidlaw and Miscoll (and, indeed, whether we would recognize any claim for aiding and abetting a tort) significantly (if not fatally) undermines any claim that the Lawyers were negligent in failing to bring such a claim. "An attorney is not liable for an error of judgment regarding an unsettled proposition of law." *Mills,* 647 A.2d at 1122; *cf. Baker v. Dorfman,* 239 F.3d 415, 420 (2d Cir.2000) (analyzing whether New York would recognize a cause of action for negligent infliction of emotional distress predicated on an HIV-test misdiagnosis before going on to determine whether plaintiff sustained damages from her attorney's late-filing of such a claim).[16]

### Conclusion

For the foregoing reasons, we affirm the orders of the trial court (1) denying appellant's motion to make a second amendment to her Amended Complaint and (2) dismissing all of appellant's claims except her

States Court of Appeals rendered after that date").

**16.** Because we find no hint or appearance of partiality in Judge Kravitz's rulings, we need not pause long over Ms. Flax's assertion that Judge Kravitz was biased and should have recused himself (because of his long acquaintance with some of the Lawyers). Suffice it to say that Ms. Flax never filed a motion for recusal and failed to file an affidavit in compliance with Super. Ct. Civ. R. 63–I, as is required of a litigant challenging a trial judge's impartiality. *See Kreuzer v. George Washington Univ.,* 896 A.2d 238, 249 (D.C. 2006). We note also that Judge Kravitz denied many of the Lawyers' motions, initially granting them only partial summary judgment and denying their motion to transfer the case to Judge Graae, their motion for leave to assert a counterclaim, and their motion to

claim against the appellee Lawyers based on the allegation that they negligently failed to bring one or more fraudulent-inducement claims. As to that fraud-related claim against the Lawyers, the order of summary judgment is reversed, and the matter is remanded for the trial court to determine whether to permit further discovery.[17]

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*

require Ms. Flax to identify more particularly the intentional tort claim that the Lawyers should have pursued.

Even if there were a basis for recusal, this court would have no authority to accede to Ms. Flax's request that we "grant a change of venue on remand to the Circuit Court for Montgomery County, Maryland." *See Catlett v. United States,* 545 A.2d 1202, 1215 n. 27 (D.C.1988) (a change of venue is not an available option in the District); *United States v. Edwards,* 430 A.2d 1321, 1345 (D.C.1981) (same).

**17.** The trial court may take into account the questionable viability of Ms. Flax's claim relating to aiding and abetting fraudulent inducement when determining what, if any, additional discovery to allow on her fraud-related claims.